William C. LEWIS, Administrator of the Estate of Virginia Lewis, Deceased, William C. Lewis, and Monica Lewis, Appellees,

v.

STATE of Iowa, Appellant.

Phillip OGAN and Sheila Ogan, Appellees,

v.

STATE of Iowa, Appellant.

No. 58137.

Supreme Court of Iowa.

June 29, 1977.

Richard C. Turner, Atty. Gen., Stephen C. Robinson, Asst. Atty. Gen., for appellant.

Wilson, Rhinehart & Bikakis and Shull, Marshall & Marks, Sioux City, for appellees.

Heard before MOORE, C. J., and MASON, UHLENHOPP, HARRIS and McCORMICK, JJ.

MASON, Justice.

This is an authorized interlocutory appeal by defendant, State of Iowa, from an adverse ruling of the trial court denying the State's motion for summary judgment. Rule 332, Rules of Civil Procedure. The challenged ruling stems from two separate law actions commenced in the Woodbury District Court September 12, 1972, seeking damages for injuries sustained by plaintiffs as a result of an automobile accident in Sioux City November 14, 1970. In one action Williams C. Lewis, individually and as administrator of the estate of his wife Virginia Lewis, was joined with Monica Lewis, his daughter, as plaintiffs. In the other action Phillip Ogan and Sheila Ogan (sometimes spelled Shelia in this record) were plaintiffs.

Plaintiffs and decedent were occupants of an automobile owned and being driven by William C. Lewis in the southbound lane of Interstate 29 when a northbound automobile driven by one Lawrence Lee Stroman crossed the median dividing said lanes and struck the Lewis vehicle. The collision resulted in the death of Virginia Lewis, property damage and personal injuries.

All references to statutes in the course of this opinion will be to the 1966 Iowa Code.

Both petitions asserted three identical theories of recovery in separate counts. Count I was based upon sections 123.43 and 129.2, The Code, and alleged Stroman's intoxicated condition at the time of the accident was the result of a negligent and wrongful sale of intoxicating liquor by the State through its liquor store employees to Stroman, a minor under the law applicable at that time. Section 599.1. Count II was based upon the statutory provisions relied

upon in Count I and sections 25A.2(5) and 25A.4, The Code. Count III, apparently seeking relief under the provisions of chapter 25A set forth specifications of negligence dealing with the sale of liquor to Stroman, the design and construction of Interstate 29 and the failure to erect a barrier on the median at the site of the accident.

Subsequent to the filing of its answers and plaintiffs' replies thereto, the State filed applications for adjudication of law points pursuant to rule 105, R.C.P., requesting the court hold the State was not a "person" subject to liability under the provisions of section 129.2, The Code. The trial court, following submission of briefs by the parties, determined the State was not a "person" within the meaning of section 129.2 and that the provisions of chapter 25A "did not bring * * * [the State] within the purview" of that section. The trial court concluded its ruling, which effectively dismissed the first two counts of each division of both petitions, by ordering plaintiffs to recast their petitions pursuant to rule 81, R.C.P. The recast petitions, filed August 24, 1973, asserted only the theory of recovery set forth in Count III of the original petitions.

May 31, 1974, the State filed a motion for summary judgment arguing that plaintiffs' petitions were jurisdictionally defective in that (1) the claims asserted therein were barred by sections 123.13 and 25A.4, (2) the sale of liquor to a minor contrary to law is not a proximate cause of the injury or damage complained of, (3) liability for the sale of liquor to a minor is actually premised upon strict liability and thus cannot be maintained under chapter 25A, and (4) the claims pertaining to the design and construction of Interstate 29 are barred by the discretionary function exception of section 25A.14(1).

Plaintiffs filed a resistance to the motion and attached thereto the affidavit of one Richard C. Nurre, a consulting engineer with offices in Sioux City, as authorized by rule 237(c), R.C.P. The affiant stated, with supporting authority, that there should have been "a clear, visual demarkation between pavement and median area" and mentioned the possibility that there should have been warning signs at the site of the accident "to alert drivers of construction taking place."

The State made a motion to strike the affidavit attached to plaintiffs' resistance to the motion for summary judgment on various grounds, including the contention it was irrelevant and immaterial to any issue raised by the pleadings in the case. The trial court reserved its ruling on the motion to strike and proceeded to hear arguments on the summary judgment motion.

At some point not entirely clear from the record the two lawsuits were consolidated.

February 19, 1975, the trial court overruled the State's motion to strike the affidavit attached to plaintiffs' resistance to summary judgment and ruled as follows on the State's summary judgment motion:

"And now being duly advised in the premises it is Ordered that Defendant's Motions for Summary Judgment are overruled as to each ground urged in four separate divisions of each motion."

From that ruling the State sought and obtained leave of this court to bring this interlocutory appeal. Plaintiffs' attempted cross appeal, seeking review of the trial court's adjudication of law points, was dismissed as an unauthorized interlocutory appeal.

The State contends the trial court erred in the following respects:

(1) In overruling division 1 of the State's motion for summary judgment wherein it was argued the petitions were jurisdictionally defective in that they asserted a claim barred by sections 25A.4 and 123.13, The Code.

(2) In overruling division 2 of the State's motion for summary judgment wherein it was argued the petitions were jurisdictionally defective in that the sale of liquor to a minor is not a proximate cause of injury or damage subsequently sustained.

(3) In overruling division 3 of the State's motion for summary judgment wherein it was argued the petitions were jurisdictionally defective in that contrary to the allegations the claim arising from the sale of liquor to a minor is not grounded upon negligence but is actually based upon strict liability which cannot serve as the basis for an action under chapter 25A, The Code.

(4) In overruling division 4 of the State's motion for summary judgment wherein it was argued the petitions were jurisdictionally defective in that the claims concerning the design and construction of Interstate 29 were barred by the discretionary function exception of section 25A.14(1), The Code.

(5) In overruling the State's motion without ruling separately on each ground asserted therein in violation of rule 118, R.C.P.

■ I. This court's review of a summary judgment determination is guided by the same principles utilized by a trial court in making that determination.

■ The purpose of summary judgment is to enable a judgment to be obtained promptly and without the expense of a trial when there is no genuine and material fact issue present. Movant is assigned the burden of demonstrating the absence of any such issue. The court must examine, in the light most favorable to the party opposing the motion, all material properly before it, including the pleadings, admissions, depositions, answers to interrogatories and affidavits, to determine whether any genuine issue of a material fact is generated thereby. If, upon this examination, the court determines no such issue is present, and, the movant is entitled to judgment as a matter of law, entry of summary judgment is proper. *Daboll v. Hoden,* 222 N.W.2d 727, 731–732 (Iowa 1974); *Davis v. Comito,* 204 N.W.2d 607, 608, 611–612 (Iowa 1973); *Goodwin v. City of Bloomfield,* 203 N.W.2d 582, 588 (Iowa 1973).

■ II. The State contends its assertion in division 1 of the motion for summary judgment that plaintiffs' claims were barred by sections 25A.4 and 123.13, The Code, is meritorious and was erroneously overruled by the trial court.

It should be noted here the State's contention is based upon an alleged absence of subject matter jurisdiction. Specifically, the State maintains plaintiffs' cause of action is not allowed by the provisions of chapter 25A, The Code. For reasons explained in division VI hereof, the State's jurisdictional contentions must be treated as if raised in a motion to dismiss and resolved accordingly. In any event, the State's position is without merit and will not serve as the basis for the desired relief.

The State argues section 25A.4, in conjunction with section 123.13, precludes plaintiffs' claims based upon the sale of liquor to Stroman.

Section 25A.4 provided in part as follows:

"* * *

"The state shall be liable in respect to such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances, * * *.

"The immunity of the state from suit and liability is waived to the extent provided in this chapter."

Section 123.13 provided:

"The commission [Iowa Liquor Control Commission], or any member of the commission, shall not be personally liable for any action at law for damages sustained by any person because of any action performed or done by the commission, or any member of the commission, in the performance of their respective duties in the administration and in the carrying out of the purposes and provisions of this chapter."

The State maintains a state liquor store employee is a "member of the commission" within the meaning of section 123.13, and consequently, since the employee cannot be held liable the State is immune from suit and liability under the provisions of section 25A.4 set out above.

This contention can be summarily dismissed. A reading of chapter 123 demonstrates the legislature clearly did not intend to include commission employees within the

grant of immunity provided by section 123.-13. Throughout chapter 123 references are made to "member, officer or employee of said commission." See sections 123.11, 123.-12 and 123.14. The legislature obviously had no problem identifying and distinguishing members of the commission and employees thereof and only afforded the immunity established by section 123.13 to the commission and the members thereof. The State's contention to the contrary is without merit.

The State seeks to support its position by pointing out counsel were unable to find a single case which assessed liability to a liquor store employee under similar circumstances. However, even assuming no such case exists, that fact obviously does not compel the construction of section 123.13 sought by the State.

It should also be noted that in dealing with the contention urged in division 1 of the State's motion for summary judgment its brief goes beyond the issue raised therein, namely, whether an employee of the commission is a "member" of the commission within the meaning of section 123.13. The surplusage appears to pertain to the issues raised in divisions 2 and 3 of the State's motion and will be dealt with accordingly.

III. As pointed out, in the second division of its motion for summary judgment the State alleged that even assuming liquor was sold to Stroman contrary to law no claim could be based thereon since the sale could not as a matter of law be a proximate cause of the injuries claimed. Division 3 of the motion was predicated on the theory plaintiffs' cause of action was premised upon strict liability and thus cannot be maintained under chapter 25A.

In support of the contention asserted in division 2 of its motion the State relies almost exclusively upon this court's opinion in *Cowman v. Hansen,* 250 Iowa 358, 92 N.W.2d 682. In *Cowman* this court stated the common law did not recognize a right of action in tort against a dispenser of alcoholic beverages for injury or damage caused by a consumer after he has left the establishment.

The State cites *Williams v. Klemesrud,* 197 N.W.2d 614, 617 (Iowa 1972), as authority for the theory declared on in division 3 of its motion. In the cited case the court held dram shop statutes impose strict liability.

Contrary to the State's contentions plaintiffs maintain they are not seeking relief under the provision of the Dram Shop Act, chapter 129, The Code. Rather, they insist their action is based on common law negligence arising from the sale of intoxicating liquor by employees of the State to an individual who was a minor at the time of the sale in violation of section 123.43. They rely upon this conduct as a proximate cause of their injuries. Under this theory we are not dealing with the foundation itself of the action as in *Hall v. Montgomery Ward & Company,* 252 N.W.2d 421, 423 (Iowa 1977), but with a statutory standard of conduct.

Thus, the question presented is whether plaintiffs may rely upon an alleged violation of section 123.43, The Code, by the State through its liquor store employees as constituting conduct which falls below the standard established by the statute for protection of the people of the State from the risk of injuries caused by intoxicated minors.

Section 123.43 as then in existence provided:

"Persons under twenty-one years of age. Except in the case of liquor given or dispensed to a person under the age of twenty-one years within a private home and with the knowledge and consent of the parent or guardian for beverage or medicinal purposes or as administered to him by either the physician or dentist for medicinal purposes no person shall sell, give, or otherwise supply liquor to any such person under the age of twenty-one years, or knowingly permit any person under that age to consume alcoholic liquors."

Section 123.91 of the 1966 Code provided a penalty for violation of any provision of chapter 123 of a fine of not less than $300 nor more than $1000 or imprisonment in the county jail not less than three months nor

more than one year or by both such fine and imprisonment.

Plaintiffs cite the following statement from Prosser, Torts, section 36 (4th Ed.):

"The standard of conduct required of a reasonable man may be prescribed by legislative enactment. When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard for all members of the community, from which it is negligence to deviate. Within the limits of municipal authority, the same may be true of ordinances. The fact that such legislation is usually penal in character, and carries with it a criminal penalty, will not prevent its use in imposing civil liability, * * *."

Restatement, Second, Torts, section 285 provides:

"How Standard of Conduct is Determined.

"The standard of conduct of a reasonable man may be

"(a) established by a legislative enactment or administrative regulation which so provides, or

"(b) adopted by the court from a legislative enactment or an administrative regulation which does not so provide, or

"(c) established by judicial decision, or

"(d) applied to the facts of the case by the trial judge or the jury, if there is no such enactment, regulation, or decision."

We set out comment c to this section:

"*Standard adopted from legislation.* Even where a legislative enactment contains no express provision that its violation shall result in tort liability, and no implication to that effect, the court may, and in certain types of cases customarily will, adopt the requirements of the enactment as the standard of conduct necessary to avoid liability for negligence. The same is true of municipal ordinances and administrative regulations. See § 286 and Comments."

Section 286 provides:

"When Standard of Conduct Defined by Legislation or Regulation Will Be Adopted.

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

"(a) to protect a class of persons which includes the one whose interest is invaded, and

"(b) to protect the particular interest which is invaded, and

"(c) to protect that interest against the kind of harm which has resulted, and

"(d) to protect that interest against the particular hazard from which the harm results."

Comment b to section 286 says:

"This Section is concerned only with the effect of the legislative enactment or regulation in providing a standard of conduct."

█ Negligence is the breach of legal duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks. It has been defined as conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. Restatement, Second, Torts, sections 281 and 286. It is immaterial whether the standard is one imposed by the rule of common law requiring the exercise of ordinary care not to injure another, or is imposed by a statute designed for the protection of others. See Prosser, Torts, section 36, n. 1 (4th Ed.).

█ Recently in *Koll v. Manatt's Transportation Co.*, 253 N.W.2d 265, 270 (Iowa 1977), this court had occasion to consider whether violation of certain provisions of both the federal and state safety standard statutes (OSHA and IOSHA) was evidence of defendant's negligence. After quoting from *Hansen v. Kemmish*, 201 Iowa 1008, 1011–1012, 208 N.W. 277, 279, 45 A.L.R. 498; *Lattner v. Immaculate Conception Church*, 255 Iowa 120, 129, 121 N.W.2d 639, 645; *Peters v. Lyons*, 168 N.W.2d 759, 766 (Iowa 1969); and authorities from other

jurisdictions, we held violation by an employer of an OSHA and IOSHA standard was evidence of negligence on the part of the employer. Such a violation was negligence *per se* as to his employee and *evidence of negligence* as to all persons who were likely to be exposed to injury as a result of the violation.

Chapter 123 of the 1966 Code was entitled "The Iowa Liquor Control Act". The first section is indicative of the intent of the legislature in enacting chapter 123 and scope and purpose of the Act. It provided:

"123.1 Public policy declared. This chapter shall be cited as the 'Iowa Liquor Control Act', and shall be deemed an exercise of the police power of the state, for the protection of the welfare, health, peace, morals and safety of the people of the state, and all its provisions shall be liberally construed for the accomplishment of that purpose, and it is declared to be the public policy that the traffic in alcoholic liquors is so affected with a public interest that it should be regulated to the extent of prohibiting all traffic in them, except as hereinafter provided for in this chapter."

In light of the foregoing authorities and the declared policy of chapter 123 it is our view section 123.43 sets a minimum standard of care for conduct generally required of the reasonably prudent man under like circumstances for purposes of a common law action of negligence based on the sale or the furnishing of intoxicating liquor.

The trial court was correct to the extent its ruling on the State's motion would permit plaintiffs to offer evidence of violation of section 123.43, The Code, by the State through its liquor store employees as tending to show conduct which falls below the standard established by the statute.

■ IV. Of course the State's negligence, in and of itself, is irrelevant in the absence of some causal connection between it and plaintiffs' injuries. *Frederick v. Goff*, 251 Iowa 290, 297, 100 N.W.2d 624, 628; *DeYarman v. State*, 226 N.W.2d 26, 28 (Iowa 1975), and authorities cited.

In Restatement, Second, Torts, section 430, it is stated:

"Necessity of Adequate Causal Relation

"In order that a negligent actor shall be liable for another's harm, it is necessary not only that the actor's conduct be negligent toward the other, but also that the negligence of the actor be a legal cause of the other's harm."

■ Recognition of the foregoing principle of law requires a return to the State's contention that no claim could be based upon the alleged sale of liquor to Stroman contrary to law since the sale could not as a matter of law be a proximate cause of the alleged injuries.

In *Cowman v. Hansen*, 250 Iowa 358, 92 N.W.2d 682, as in the case at bar, plaintiffs were asserting a claim under principles of common law negligence after having been thwarted in their attempt to recover under the provisions of the Dram Shop Act. A dram shop action was denied plaintiffs in *Cowman* on the basis of the legislature's determination that beer containing not more than four percent alcohol was not intoxicating liquor within the meaning of chapter 129, The Code, 1954. As pointed out, plaintiffs' right to recover under a common law negligence theory was denied.

This court has adhered to the principles enunciated in *Cowman*. See *Wendelin v. Russell*, 259 Iowa 1152, 1154–1155, 147 N.W.2d 188, 190; *Federated Mutual Imp. & H. Ins. Co. v. Dunkelberger*, 172 N.W.2d 137, 139 (Iowa 1969); *Williams v. Klemesrud*, 197 N.W.2d 614, 617 (Iowa 1972), 64 A.L.R.3d 843; *Dairyland Insurance Company v. Mumert*, 212 N.W.2d 436, 441 (Iowa 1973); *Robinson v. Bognanno*, 213 N.W.2d 530 (Iowa 1973).

Plaintiffs seek to loosen the underpinnings of the *Cowman* line by directing this court's attention to cases from other jurisdictions wherein the common law rule of nonliability has been rejected or modified substantially.

In *Trail v. Christian*, 298 Minn. 101, 213 N.W.2d 618, the Minnesota Supreme Court, in a case factually similar to *Cowman*, recognized a common law right of recovery

against a tavern owner for damages sustained in a collision with an intoxicated driver. After recognizing the common law rule and the fact it was premised upon the theory that the proximate cause of the negligence was not the vendor's act of selling or furnishing the liquor but its consumption by the customer-tortfeasor, the court noted the many decisions of other jurisdictions which had forsaken the rule. Portions of the court's analysis are set out as follows:

"The major assault upon the common-law doctrine of nonliability commenced with *Waynick v. Chicago's Last Department Store,* 269 F.2d 322 (7 Cir. 1959), certiorari denied, 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554 (1960). * * * Holding that a common-law action would lie and citing traditional tort principles of duty and proximate cause, the court concluded that serving the patron set into motion a foreseeable chain of events for which the innkeeper was ultimately responsible.

"The decision in *Waynick* is the cornerstone for the leading case on this subject, namely, *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1, 75 A.L.R.2d 821 (1959). In that case, Robert Nichols, a minor, was sold alcoholic beverages by four taverns in and around the city of Newark, New Jersey, one or more of the taverns serving him when he had become intoxicated. Thereafter, while operating his automobile, Nichols collided with the vehicle driven by Arthur Rappaport and owned by the plaintiff. As a result of the collision, Rappaport died. Plaintiff brought an action against each of the four taverns to recover damages in her individual capacity as owner of the car and, as administrator of Rappaport's estate, for his death. The trial court granted summary judgment in favor of defendants, holding that the complaint alleging an action grounded in negligence failed to state a valid cause of action. The Supreme Court of New Jersey unanimously reversed. Recognizing first that New Jersey had no Civil Damage Act at the time the cause of action arose, the court held (31 N.J. 201, 156 A.2d 8, 75 A.L.R.2d 830):

"'* * * Where a tavern keeper sells alcoholic beverages to a person who is visibly intoxicated or to a person he knows or should know from the circumstances to be a minor, he ought to recognize and foresee the unreasonable risk of harm to others through action of the intoxicated person or the minor. * * *

"'*When alcoholic beverages are sold by a tavern keeper to a minor or to an intoxicated person, the unreasonable risk of harm not only to the minor or the intoxicated person but also to members of the traveling public may readily be recognized and foreseen; this is particularly evident in current times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent.*'
"* * *

"Since *Waynick* and *Rappaport,* several other jurisdictions have reevaluated the common-law rule of nonliability of commercial liquor vendors. A substantial number have determined that the sale or furnishing of intoxicating beverages may well be the proximate cause of injuries sustained as a result of an intoxicated individual's tortious conduct and that liability may thus be imposed upon the vendor or other person furnishing intoxicants in favor of the injured, innocent third party.

"We agree with the Supreme Court of California in *Vesely v. Sager,* 5 Cal.3d 153, 163, 95 Cal.Rptr. 623, 630, 486 P.2d 151, 158 (1971), as it held:

"'To the extent that the common law rule of nonliability is based on concepts of proximate cause, we are persuaded by the reasoning of the cases that have abandoned that rule. * * * [A]n actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct. * * *

"'* * *

"'* * * [I]t is clear that the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries inflicted by that individual upon a

*third person. If such furnishing is a proximate cause, it is so because the consumption, resulting intoxication, and injury-producing conduct are foreseeable intervening causes, or at least the injury-producing conduct is one of the hazards which makes such furnishing negligent.'*" 213 N.W.2d at 622–624. (Emphasis in original).

The court in *Trail* held plaintiff had properly pled a common law negligence action and overruled its prior inconsistent decisions.

The following is a list of cases which, like the courts in *Trail, Rappaport* and *Vesely,* have rejected or substantially modified the common law rule of nonliability: *Vance v. United States,* 355 F.Supp. 756, 761 (D.Alaska 1973); *Deeds v. United States,* 306 F.Supp. 348, 354–361 (D.Mont.1969); *Prevatt v. McClennan,* 201 So.2d 780 (Fla.App. 1967); *Elder v. Fisher,* 247 Ind. 598, 217 N.E.2d 847, 852–853; *Pike v. George,* 434 S.W.2d 626, 629 (Ky.1968); *Pence v. Ketchum,* 326 So.2d 831, 836 (La.1976); *Adamian v. Three Sons, Inc.,* 353 Mass. 498, 233 N.E.2d 18; *Ramsey v. Anctil,* 106 N.H. 375, 211 A.2d 900, 901; *Berkeley v. Park,* 47 Misc.2d 381, 262 N.Y.S.2d 290; *Mason v. Roberts,* 33 Ohio St.2d 29, 294 N.E.2d 884, 887–888, 62 Ohio Opinions 2d 346; *Wiener v. Gamma Phi Chap. of Alpha Tau Omega Frat.,* 258 Ore. 632, 485 P.2d 18, 23, 53 A.L.R.3d 1276; *Jardine v. Upper Darby Lodge No. 1973, Inc.,* 413 Pa. 626, 198 A.2d 550, 552–553.

In rejecting the time-honored common law rule of nonliability the court in *Trail v. Christian,* supra, made the following statements with respect to the flexibility of the common law:

"In reaching this result, we recognize that the common law is not a thing of chiseled marble to be left unchanged for centuries and are mindful of the following statements made by the Wisconsin Supreme Court in *Bielski v. Schulze,* 16 Wis.2d 1, 11, 114 N.W.2d 105, 110 (1961):

"'* * * Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of *stare decisis,*

which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others "long dead and unaware of the problems of the age in which he lives, do his thinking for him." Mr. Justice Douglas, Stare Decisis, 49 Columbia Law Review (1949), 735, 736.'" 213 N.W.2d at 624.

*Cowman v. Hansen,* supra, denied recovery on the ground that the proximate cause of injury was the buyer's act in drinking the liquor and that the vendor's act in selling it was too remote to be a proximate cause of the plaintiffs' injuries. The decision sought to separate and insulate the selling of intoxicating liquor from its consumption. This case was decided in 1958 and, although the statements contained therein may well have reflected the status of such litigation in the various states at that time, the noticeable trend of recent decisions suggests that no longer is the common law rule of nonliability being uniformly and summarily accepted as controlling. The opinion has been criticized in many of the decisions of other jurisdictions cited in this division.

Statements in our opinions to the effect that we have never recognized a common law right to recover against dram shop operators stem from our holding in *Cowman* that the sale of intoxicating liquor to an individual could not, as a matter of law, be the proximate cause of injuries alleged to have been sustained by an innocent third party as a result of an intoxicated individual's tortious conduct.

Like the court in *Trail v. Christian* we see no valid reason to now perpetuate the injustice and hardship resulting from application of the judicially formulated rule that the consumption of an alcoholic beverage, rather than its sale, is the proximate cause of injury flowing from intoxication.

We therefore hold the sale or furnishing of intoxicating liquor in violation of section 123.43 may well be the proximate cause of

injuries sustained as a result of an intoxicated individual's tortious conduct and liability may thus be imposed upon the violators in favor of the injured, innocent third party. The question of proximate cause under such facts and circumstances would be for the trier of fact.

Consequently, the trial court correctly overruled the State's motion for summary judgment insofar as it relied upon absence of proximate cause as a matter of law.

To the extent that any of our prior decisions are inconsistent with this conclusion, they are hereby overruled in this respect.

█ This holding is prospective and is applicable only with regard to personal injuries sustained from and after the date this opinion is filed, except that it shall additionally apply to the instant case.

V. Division 3 of the State's motion for summary judgment asserted plaintiffs' petitions were jurisdictionally defective in that the claims arising from the sale of liquor were actually based upon strict liability principles and such a claim cannot be brought under chapter 25A. The trial court disagreed and the State contends this was error.

For reasons more fully explained in the next division, the State's contention raises an issue concerning jurisdiction of the subject matter of plaintiffs' claims for relief, and consequently, should be dealt with as if asserted in a motion to dismiss.

█ It would appear the State's contention that strict liability claims may not be brought under the provisions of chapter 25A arguably has merit. Language supporting that contention is found in *Laird v. Nelms*, 406 U.S. 797, 802–803, 92 S.Ct. 1899, 1902, 32 L.Ed.2d 499, reh. den., 409 U.S. 902, 93 S.Ct. 95, 34 L.Ed.2d 165, and *Dalehite v. United States*, 346 U.S. 15, 44–45, 73 S.Ct. 956, 972–973, 97 L.Ed. 1427. The federal tort claims act, like chapter 25A, allows claims based upon the "negligent or wrongful act or omission" of an employee. Hence, federal interpretations of that phrase may be utilized in interpreting the same phrase in the Iowa statute. *Hubbard*

*v. State*, 163 N.W.2d 904, 910–911 (Iowa 1969); *Lloyd v. State*, 251 N.W.2d 551, 556 (Iowa 1977).

█ However, assuming arguendo strict liability claims may not be prosecuted under chapter 25A, the State's contention fails because plaintiffs are not asserting such a claim. As pointed out plaintiffs are not seeking relief under the provisions of the Dram Shop Act, chapter 129, The Code. In our opinion they are asserting a right to recover from the State under elementary principles of common law negligence.

The third ground asserted in the State's motion for summary judgment is clearly without merit, and hence, the trial court appropriately overruled same.

VI. The State maintains plaintiffs' specifications of negligence based upon the design and construction of Interstate 29 are barred by the discretionary function exception to state liability set out in section 25A.14(1) and the trial court erroneously overruled the division of the State's motion for summary judgment pointing out that defect.

█ As pointed out in *Lloyd v. State*, 251 N.W.2d at 555–558, if one of the enumerated exceptions to state tort liability set out in chapter 25A applies, a court does not have subject matter jurisdiction of the claim and it must consequently be dismissed. The *Lloyd* opinion likewise notes that issues concerning subject matter jurisdiction may be raised at any time and in any manner, but the only proper disposition of a valid subject matter jurisdiction objection is entry of an order dismissing the claim. Therefore, the State's assertions with respect to the lack of subject matter jurisdiction should be dealt with as if raised in a motion to dismiss.

█ A motion to dismiss a pleading for failure to state a claim upon which relief could be granted is sustainable only when it appears to a certainty the pleader has failed to state a claim upon which any relief may be granted under any state of facts which could be proved in support of the claim

asserted. In making this determination the pleading should be construed in the light most favorable to the pleader with doubts resolved in his favor and the challenged allegations accepted as true. *Murphy v. First Nat. Bank of Chicago*, 228 N.W.2d 372, 375 (Iowa 1975).

In light of the determination the State's objections to the court's jurisdiction of the subject matter of the claims should have been considered a motion to dismiss, plaintiffs' affidavit cannot be considered. That result is mandated by the following language from *Osbekoff v. Mallory*, 188 N.W.2d 294, 297 (Iowa 1971), 64 A.L.R.3d 1242, 1245–1246:

"However, in the present case plaintiff is urging that we examine extraneous facts to support his petition when its sufficiency is questioned by defendants' motion. A motion to dismiss is directed to the pleadings as they stand. Except those facts of which judicial notice may be taken, the pleadings cannot be aided by evidence when subjected to a motion to dismiss for failure to state a claim on which any relief can be granted. * * * [citing authority]." See also *Rush v. Sioux City*, 240 N.W.2d 431, 438 (Iowa 1976).

With the foregoing principles in mind, the question now becomes, under the allegations of plaintiffs' petitions, whether it is a certainty that section 25A.14(1) precludes plaintiffs' claims.

Section 25A.14(1) provided:

"The provisions of this chapter shall not apply to:

"1. *Any claim based upon* an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon *the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused.*" (Emphasis supplied).

This court has dealt with the discretionary function exception of section 25A.14(1) in two fairly recent cases, *Stanley v. State*, 197 N.W.2d 599 (Iowa 1972) and *Seiber v. State*, 211 N.W.2d 698 (Iowa 1973), which, on the basis of factual distinctions present therein, reached contrary results. Plaintiffs see *Stanley* as controlling herein, while the State argues *Seiber* is dispositive of this appeal. Therefore, a determination must be made as to which of those two cases more closely coincides with the factual circumstances present herein.

In *Stanley*, plaintiff alleged the State had been negligent in failing to adequately warn motorists of highway hazards created by ongoing repair work on a highway. The State contended it was immune from suit, relying upon the discretionary function exception of section 25A.14(1). With the following language, this court rejected the State's argument:

"Virtually all the federal decisions on the 'discretionary function' exception to governmental tort liability recognize and apply the 'planning' and 'operational' tests in reaching a decision under particular facts. The difficulty arises in attempting to tell when the one stops and the other begins.

"Undoubtedly there are hard cases where planning and operation overlap, but this is not one of them. The decision to keep highway 175 open during construction was one within the proper discretionary function for which no liability would attach; but once that decision was made, negligence in carrying out that policy cannot be excused on the ground the negligent acts were performed in the exercise of discretion within the meaning of the statutory exemption.

"Every act involves discretion. However, the decision not to give proper warning is no more a 'discretionary function' as defined in section 25A.14(1) than is the determination to drive a state-owned vehicle in excess of the speed limit.

" * * *

"Here, * * *, all exercise of discretion had ceased before commission of the acts which the trial court found were negligent. We hold the conduct complained of

clearly subjects the state to liability under the State Tort Claims Act." 197 N.W.2d at 603–604.

In *Seiber,* plaintiff's specifications of negligence concerned the State's failure to take adequate precautions to protect motorists from the hazards created by the State's deer population. The State asserted the provisions of section 25A.14(1) prohibited plaintiff's claim. This court distinguished plaintiff's claim from that asserted in *Stanley* and sustained the State's argument as follows:

"We have no difficulty in reaching the conclusion that all of the specifications of negligence which the plaintiff alleges in his petition come within the discretionary function exclusion of section 25A.14(1), The Code. Succinctly stated, plaintiff's action is based upon the propositions that the State should have either warned of the presence of deer or should have prevented deer from entering the highway.

"The policy determination of the State Highway Commission not to post 'deer crossing' signs on the highways of this State most certainly involves the exercise of discretion. Whatever correlated responsibility might have rested upon the Conservation Commission also involved a discretionary function.

"We are cognizant of the fact that lines of demarcation have been drawn in governmental tort liability cases with regard to the 'discretionary function' exception and the application of the 'planning' and 'operational' tests in reaching decisions under particular facts. * * * In *Stanley,* this court * * * [setting forth facts and decision of *Stanley*].

"We do not have such a situation confronting us here; the policy determination not to erect signs could not have been implemented in any sense. Unless it could be said that the policy determination was 'operational' rather than a 'planning' function, the discretionary aspects of section 25A.14(1) are entirely preclusive of plaintiff's right to maintain this suit.

"We conclude the policy determination not to erect signs along highways of this State, and particularly at the point in the public highway where plaintiff's decedent's automobile came into collision with a deer, involves the exercise of discretion at the planning stage and that the trial court properly sustained defendant's motion." 211 N.W.2d at 700.

At this point it would appear instructive to set out in full plaintiffs' specifications of negligence with respect to the design and construction of Interstate 29:

"2. That the defendant State of Iowa was through the acts of its employees while acting within the scope of their employment negligent in the following particulars:

"(a)  *  *  *

"(b) In improperly designing and constructing Interstate Highway number 29 so as to allow or permit an automobile to cross over from the northbound lane to the southbound lane;

"(c) In failing to construct a railing or barricade on the median of Interstate Highway number 29 to keep an automobile from crossing over from one lane of travel to another."

Although innumerable cases on both the state and federal levels have struggled with the application of a discretionary function exception to a governmental tort claims act, few have dealt with the problem in circumstances involving highway design and construction. Some cases which hold the design and construction of highways is properly classified as a discretionary function are: *Mahler v. United States,* 306 F.2d 713, 723 (3 Cir. 1962), cert. den., 371 U.S. 923, 83 S.Ct. 290, 9 L.Ed.2d 231; *Daniel v. United States,* 426 F.2d 281 (5 Cir. 1970); and *Sisley v. United States,* 202 F.Supp. 273 (D.Alaska 1962).

However, in our opinion the better reasoned position is demonstrated by the pronouncement in *Stanley v. State,* 197 N.W.2d at 602–604. It finds strong support in the following statement from *State v. Webster,* 88 Nev. 690, 504 P.2d 1316, 1318–1319:

"The State claims total immunity from suit, on the ground that the failure to in-

stall a cattle guard at the point where U.S. Highway 395 joined the controlled-access freeway was an act of discretion for which the State was exempted from liability. The citizens of the State of Nevada, acting through the Legislature, have conditionally waived sovereign immunity. NRS 41.031. Such immunity, however, was not waived if the act complained of was a discretionary function of government. See NRS 41.- 032(2). Here the governmental function to be considered was the construction of a controlled-access freeway. It was not mandatory upon the State to construct the freeway. * * * *Whether or not,* for the convenience of the traveling public, *the State would construct a controlled-access freeway * * * was an exercise of discretion* based upon policy. Its decision to do so was a discretionary act. *Once the decision was made to construct a controlled-access freeway * * *, the State was obligated to use due care to make certain that the freeway met the standard of reasonable safety for the traveling public. This is the type of operational function of government not exempt from liability if due care has not been exercised and an injury results. * * * [citing authorities].*" (Emphasis supplied). See also *Andrus v. State,* 541 P.2d 1117, 1120 (Utah 1975).

The analysis and result of the court in *Webster* is supported by the following cases: *Henderson v. Bluemink,* 167 U.S. App.D.C. 161, 511 F.2d 399, 401–402; *Ingham v. Eastern Air Lines, Inc.,* 373 F.2d 227, 236 (2 Cir. 1967), cert. den., 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292; *Seaboard Coast Line Railroad Co. v. United States,* 473 F.2d 714, 716 (5 Cir. 1973); *S. Schonfeld Company, Inc. v. SS Akra Tenaron,* 363 F.Supp. 1220, 1221 (D.So.Car.1973); *Montellier v. United States,* 202 F.Supp. 384, 390– 392 (E.D.N.Y.1962), aff'd, 315 F.2d 180 (2 Cir. 1963); *McNamara v. United States,* 199 F.Supp. 879, 881 (D.D.C.1961). ·  ·  ··· ·

In *Lloyd v. State,* 251 N.W.2d at 557, this court, in dismissing plaintiffs' petitions, noted that "plaintiffs' claims for relief focus on the decision itself and not the negligent implementation of that discretionary

decision." In the present case plaintiffs' claims do not focus on the decision to build Interstate 29, a discretionary function, but on the alleged negligence of the State in *implementing* that decision. Consequently, section 25A.14(1) is not preclusive of plaintiffs' right to relief.

It cannot be said with certainty plaintiffs have failed to state a claim upon which any relief may be granted under any state of facts which could be proved in support of the claims asserted in their petitions. Therefore, the trial court appropriately overruled the State's motion for summary judgment, or more properly a motion to dismiss, based upon an alleged lack of subject matter jurisdiction under section 25A.14(1).

VII. The State's final contention is that the trial court erred in overruling its motion for summary judgment without ruling on each separate ground asserted therein. Although not articulated, it would appear the State maintains the trial court's failure to rule separately on each division of the motion requires reversal under rule 118, R.C.P., and this court's opinion in *Turner v. Thorp Credit, Inc.,* 228 N.W.2d 85 (Iowa 1975).

Rule 118, R.C.P., provides:

"A motion, or other matter involving separate grounds or parts, shall be disposed of by separate ruling on each and not sustained generally."

In *Turner,* the trial court sustained defendants' multi-divisioned motion to dismiss and entered the following order: "The defendants' motions to dismiss are sustained and plaintiffs' petition is dismissed at plaintiffs' costs." This court made the following comments with respect to the trial court's cursory disposition of the matter:

"The trial court's ruling certainly does not comply with rule 118, R.C.P. which provides: * * *.

"In *Ruby v. Easton,* Iowa, 207 N.W.2d 10, 14, 15, we point out the reason for rule 118 and admonish lower courts against summary general rulings in violation thereof. See

also *Brekken v. County Bd. of Rev. for Story County,* Iowa, 223 N.W.2d 246, 247. Cases involving violation of rule 118 will ordinarily be reversed and remanded for specific rulings. However, in the present case it clearly appears the trial court erred in sustaining defendants' motion to dismiss. * * *." 228 N.W.2d at 87.

Arguably the trial court's ruling herein which overruled the State's motion "as to each ground urged in four separate divisions" minimally complied with rule 118. However, the issue of minimal compliance with rule 118 need not be resolved in light of the fact the State's contention fails when the purpose of rule 118 is inspected.

A portion of the Advisory Committee's comment following the rule states:

" * * * Under the doctrine that a general ruling sustaining a motion is deemed to sustain every ground, no matter how absurd, it is necessary in review of such rulings to argue every ground, even those the judge never actually thought were good. *Both the appellate court and the parties should be entitled to know what grounds are upheld,* thus shortening the later phases of the matter." (Emphasis supplied).

The Advisory Committee's comment and the rule itself demonstrate that the problem sought to be eradicated was the necessity on appeal from the trial court's sustention of a motion of reviewing all grounds asserted therein. If a court overrules a motion it is clear the trial court saw no merit in *any* of the grounds asserted therein. The problem which rule 118 sought to alleviate is not present when the motion is overruled, as here.

This court's opinions bear out the above analysis. See *Ruby v. Easton,* 207 N.W.2d 10, 14–15 (Iowa 1973); *Dobson v. Jewell,* 189 N.W.2d 547, 554 (Iowa 1971); *Greenwell v. Meredith Corporation,* 189 N.W.2d 901, 904 (Iowa 1971); *Bailey v. Chicago, Burlington & Quincy Railroad Co.,* 179 N.W.2d 560, 563 (Iowa 1970); *Bourjaily v. Johnson County,* 167 N.W.2d 630, 632 (Iowa 1969).

Since the purpose of rule 118, R.C.P., is to eliminate unnecessary issues from appellate review following the trial court's *sustention* of "a motion, or other matter," the trial court's failure to rule in accordance therewith in overruling the State's motion is not reversible error. The State's contrary contention is without merit.

With directions to proceed in accordance with the Rules of Civil Procedure the case is therefore

Affirmed and remanded.