Michael James CLARK and Shirley J. Clark, Individually, and Michael James Clark, Administrator of the Estate of Michelle Lynn Clark, Deceased, Appellants,

v.

Robert G. MINCKS, Individually and as Administrator of the Estate of Nancy Mincks, Deceased, and Gale Bogle, Defendants,

and

William E. Mincks and Larry Rex Mincks, Appellees.

Michael James CLARK and Shirley J. Clark, Individually, and Michael James Clark, Administrator of the Estate of Michelle Lynn Clark, Deceased, Appellees,

v.

Robert G. MINCKS, Individually and as Administrator of the Estate of Nancy Mincks, Deceased, Defendants,

Gale Bogle, Appellant,

and

William E. Mincks and Larry Rex Mincks, Defendants.

Nos. 83–343, 83–1164.

Supreme Court of Iowa.

March 20, 1985.

Tom Riley, Peter C. Riley, and Mary K. Hoefer of Tom Riley Law Firm, Cedar Rapids, for appellants Clark.

James R. Snyder and Gregory M. Lederer of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellant Bogle.

Stephen A. Richardson, Bloomfield, for appellees William E. and Larry Rex Mincks.

UHLENHOPP, Justice.

Plaintiffs Clark assert three claims growing out of an alleged wrongful death: one against the owner and the estate of the deceased driver of the van which was involved, another against the hosts of a cookout which the deceased driver had attended, and the third against a passenger in the van. These two consolidated appeals involve the latter two claims.

The appeals present two basic tort liability questions, and come to us on the pleadings and results of discovery. One appeal is founded on the hosts' alleged giving alcoholic beverages to an intoxicated guest (the driver of the van). The other appeal is founded on an alleged duty of care by a passenger in a motor vehicle for the safety of another passenger.

Plaintiffs allege that defendants William E. and Larry Rex Mincks (the Mincks) hosted a rural party during the late afternoon and evening of October 1 and into October 2, 1982, and gave beer or other intoxicants to (now) decedent Nancy Mincks when she was intoxicated. Plaintiffs had their children at the party, one of whom was Michelle Lynn Clark. Nancy Mincks and others, including Michelle, entered a van owned by Nancy's husband, and Nancy operated it. The van flipped onto its side and continued rolling over, and Nancy and Michelle were killed. In one count plaintiffs ask damages of the Mincks for Michelle's death.

The Mincks moved to dismiss plaintiffs' petition for failure to state a claim, on the ground that a cause of action against social hosts does not arise from injuries flowing

from the hosts' giving intoxicants to a guest. The district court sustained the motion, and we granted plaintiffs' application to appeal.

In another count plaintiffs asserted a claim against defendant Gale Bogle for Michelle's death. Bogle moved for summary judgment as to this count. We thus look to the documentation in the case which was before the district court. Viewing that documentation in plaintiffs' favor, *Tasco, Inc. v. Winkel*, 281 N.W.2d 280, 282 (Iowa 1979), findings could be made that Nancy Mincks began drinking about noon on October 1st before she came to the cookout, and then drank again in the evening at the cookout until late that night; that she drank over ten twelve-ounce cups of beer at the cookout, had difficulty standing, and spilled beer on one of the hosts; that Bogle knew she was too drunk to drive and at one point in the evening held her up to prevent her from stumbling; and that at the time of the mishap her blood-alcohol level was .222 milligrams percent.

The following additional findings could be made. Nancy and Mrs. Bogle had brought quarters for their children to use in playing video games. About midnight Nancy and Bogle decided that at least some of the people remaining at the party should take the children into town to a tavern which had video games. Mrs. Bogle loaded the Bogle car with girls, and departed for town. She did not have room, however, for Michelle or for the boys. Nancy brought her husband's van around to the picnic site, and urged others to climb in and go to town. Bogle got into the van—the only adult beside Nancy—as well as plaintiffs' small son and another boy. Michelle was playing on the van steps.

Plaintiff Shirley J. Clark, aware of Nancy's condition, asked Nancy's husband, Robert G. Mincks, not to let her drive, and requested plaintiff Michael J. Clark to remove their son from the van. Robert made the request of Nancy, and Michael assured Shirley that Nancy would not drive. Plaintiffs then removed their son from the van; the other boy remained in the vehicle. A finding could reasonably be made that Bogle knew plaintiffs did not want their children to ride with Nancy.

At some point Michelle also entered the van, and the van departed. Plaintiff Michael J. Clark thought Michelle was in the first carload, but plaintiff Shirley J. Clark knew the girl was in the van.

Plaintiffs soon left in a third vehicle for the tavern. On the way they came upon the wrecked van, and found that Nancy and Michelle had been killed.

The district court overruled Bogle's motion for summary judgment in material part.

1. *Hosts' giving intoxicants.* We first take up plaintiffs' claim that a common-law cause of action for negligence exists against the Mincks for Michelle's death, arising from the Mincks' giving Nancy intoxicants when she was intoxicated. Plaintiffs claim the negligence arises here from violation of a statute. *See* Restatement (Second) of Torts § 286 (1965) (negligence based on statutory violation). They rely on section 123.49(1) of the Iowa Code of 1983:

No person shall sell, dispense, or give to any intoxicated person, or one simulating intoxication, any alcoholic liquor or beer.

As the question arises from a ruling on a motion to dismiss, we take plaintiffs' allegations in their petition as true and construe the allegations in the light most favorable to the pleaders. *Salsbury Laboratories v. Iowa DEQ*, 276 N.W.2d 830, 833 (Iowa 1979).

Most of the cases which have come before this court involving the furnishing of intoxicants to another person arose in the dramshop context. This one however involves social hosts. Two problems arise: whether a cause of action can exist at all outside the dramshop context and, if so, whether we should reject such a cause of action in the social setting for policy reasons.

A. Our present statute involving liability for providing liquor to another, whereby a third person is injured, does not create

liability in the present context; it is limited to liability of a licensee or permittee of a liquor or beer establishment. Iowa Code § 123.92 (1983). Can a common-law cause of action arise in the non-licensee or non-permittee setting? Two of our recent decisions, one of which was decided after the district court's ruling here, so indicate.

Formerly this court and courts in general held that a person who furnished intoxicants to another, who in turn injured a third person, was not liable to the third person, because the consumption of the liquor and not the furnishing of the liquor was the proximate cause of the injury. *Cowman v. Hansen,* 250 Iowa 358, 92 N.W.2d 682 (1958). That decision, however, came into question in *Lewis v. State,* 256 N.W.2d 181 (Iowa 1977). In *Lewis* a state liquor store employee sold liquor to a minor in violation of a statute prohibiting such sales. Iowa Code § 123.43 (1971). Lewis did not rely on the dramshop statute but on common-law negligence arising from violation of section 123.43, and made a frontal attack on *Cowman.* We said:

> We therefore hold the sale or furnishing of intoxicating liquor in violation of section 123.43 may well be the proximate cause of injuries sustained as a result of an intoxicated individual's tortious conduct and liability may thus be imposed upon the violators in favor of the injured, innocent third party. The question of proximate cause under such facts and circumstances would be for the trier of fact.
>
> Consequently, the trial court correctly overruled the State's motion for summary judgment insofar as it relied upon absence of proximate cause as a matter of law.
>
> To the extent that any of our prior decisions are inconsistent with this conclusion, they are hereby overruled in this respect.

We note, however, that our holding was in the context of a commercial sale of liquor in a store and not in the social setting we have here. Moreover, Nancy was an adult, and the sale in *Lewis* was to a minor.

In the *Lewis* opinion, however, we predicated negligence on violation of statute, and we cited the Restatement sections on statutory violations as negligence. We did not restrict that rationale to statutes dealing with minors.

The other recent decision is *Haafke v. Mitchell,* 347 N.W.2d 381 (Iowa 1984). One part of *Haafke* involved sales of intoxicants to a minor or to an intoxicated person, by employees of the licensee or permittee. A question in the case was whether those employees would be liable to an injured person on a common-law basis. The vote of this court was somewhat splintered, but a majority of the court held that such liability would arise. The court stated:

> Applying the principles of common-law liability discussed above, we hold that these employees may be held liable under common law for negligence in furnishing liquor to Miller, and such negligence may be based upon violations of statute or ordinance as alleged here, under the authority of *Lewis.* This liability is not preempted by the dram shop act.

*Id.* at 388. Nowhere in the opinion did the court limit the employee's liability for sales to an intoxicated person to cases in which the intoxicated person was also a minor.

■ We thus hold as in *Haafke* that a common-law cause of action can arise from a sale in violation of section 123.49(1). We note again, however, that the dispensing of intoxicants in *Haafke* took place in the frame of reference of sales in a commercial liquor establishment, as distinguished from gifts of intoxicants by a social host such as we have here.

B. Apart from furnishing intoxicants to minors, nearly all courts that have considered the assertion of liability against a social host have rejected it, a number of them on the proximate cause basis which we abandoned in *Lewis.* The decisions are analyzed in *Klein v. Raysinger,* 504 Pa. 141, 470 A.2d 507 (1983). *See also Olson v. Ische,* 343 N.W.2d 284 (Minn.1984); *Olsen v. Copeland,* 90 Wis.2d 483, 280 N.W.2d 178 (1979). The two principal decisions which have found liability are *Coulter v.*

*Superior Court of San Mateo County,* 21 Cal.3d 144, 145 Cal.Rptr. 534, 577 P.2d 669 (1978), and *Kelly v. Gwinnell,* 96 N.J. 538, 476 A.2d 1219 (1984). *Coulter* was abrogated by the California legislature. Cal. Business and Professional Code § 1714(b) and (c), § 25602(b) and (c) (West Supp. 1985).

A number of forceful arguments can be made both for and against liability of the social host. Opposing liability, the court stated in *Edgar v. Kajet,* 84 Misc.2d 100, 103, 375 N.Y.S.2d 548, 552 (Sup.Ct.1975), *aff'd,* 55 A.D.2d 597, 389 N.Y.S.2d 631 (1976):

> The implications of imposing civil liability on Avis herein are vast and far-reaching. Extending liability to non-sellers would open a virtual Pandora's box to a wide range of numerous potential defendants when the Court does not believe that the legislature ever intended to enact a law that makes social drinking of alcoholic beverages and the giving of drinks of intoxicating liquors at social events actionable. Just a recitation of a few of the considerations involved herein impels this Court to conclude that any extension of liability should be a legislative act. For example, how is a host at a social gathering to know when the tolerance of one of his guests has been reached? To what extent should a host refuse to serve drinks to those nearing the point of intoxication? Further, how is a host to supervise his guests' social activities? The implications are almost limitless as to situations that might arise when liquor is dispensed at a social gathering, holiday parties, family celebrations, outdoor barbecues and picnics, to cite a few examples. If civil liability were imposed on Avis herein, it could be similarly imposed on every host who, in a spirit of friendship serves liquor.
>
> In a final analysis, the controlling consideration is public policy, and any extension of liability should be carefully considered after all the factors have been examined and weighed in our legislative process, that is, after extensive hearings, surveys and investigation.

On the other hand, the majority argued in *Kelly,* 96 N.J. at 548–49, 476 A.2d at 1224–25 (citations omitted):

> We therefore hold that a host who serves liquor to an adult social guest, knowing both that the guest is intoxicated and will thereafter be operating a motor vehicle, is liable for injuries inflicted on a third party as a result of the negligent operation of a motor vehicle by the adult guest when such negligence is caused by the intoxication. We impose this duty on the host to the third party because we believe that the policy considerations served by its imposition far outweigh those asserted in opposition. While we recognize the concern that our ruling will interfere with accepted standards of social behavior; will intrude on and somewhat diminish the enjoyment, relaxation, and camaraderie that accompany social gatherings at which alcohol is served; and that such gatherings and social relationships are not simply tangential benefits of a civilized society but are regarded by many as important, we believe that the added assurance of just compensation to the victims of drunken driving as well as the added deterrent effect of the rule on such driving outweigh the importance of those other values. Indeed, we believe that given society's extreme concern about drunken driving, any change in social behavior resulting from the rule will be regarded ultimately as neutral at the very least, and not as a change for the worse; but that in any event if there be a loss, it is well worth the gain.
>
> The liability we impose here is analogous to that traditionally imposed on owners of vehicles who lend their cars to persons they know to be intoxicated. If, by lending a car to a drunk, a host becomes liable to third parties injured by the drunken driver's negligence, the same liability should extend to a host who furnishes liquor to a visibly drunken guest who he knows will thereafter drive away.

■ The opinions in our *Lewis* and *Haafke* decisions base common-law liability broadly on breach of statute, without any indication of an exception for the social host. The statute itself, section 123.49(1), does not except the social host; it proscribes serving "any" intoxicated person. It is not limited to sales of intoxicants by vendors—it provides that no "person" shall sell, dispense, "or give" intoxicants. § 123.49(1). On this branch of the case we hold, and hold only, that a motion to dismiss should be overruled by virtue of section 123.49(1) of the Code when the allegations of the petition are such that the plaintiff could introduce substantial evidence showing (1) the guest was intoxicated, (2) the host personally was actually aware the guest was intoxicated, (3) the host then made beer (or other intoxicating beverages) available to the guest, (4) the guest drank the beer (or beverages), (5) the guest, while intoxicated, then operated a motor vehicle, and (6) by reason of the intoxication, the guest operated the vehicle in a manner which caused injury to (or the death of) the plaintiff (or the plaintiff's decedent).

■ Under notice pleading, plaintiffs' petition in this case is sufficient to permit introduction of such evidence. The district court should have overruled the Mincks' motion to dismiss.

II. *Bogle's alleged affirmative duty.* In their brief plaintiffs succinctly state the issue against defendant Bogle thus: "The sole issue in this case is whether *Gale Bogle* had a duty either to prevent Nancy Mincks from driving the vehicle while intoxicated or to remove or prevent Michelle Clark from entering the van while Nancy was at the wheel."

Plaintiffs do not rest their claim against Bogle on a duty of Bogle to exercise care for his own safety. Nor do they claim that Nancy's conduct is imputed to Bogle, or that Bogle himself placed Michelle in the van and thus exposed her to danger. Rather, they argue that when Bogle and Michelle were in the car, Bogle had an affirmative duty running directly from himself to Michelle to protect her from danger of an intoxicated driver. They base this duty on the contention that Bogle had "assumed custody" of Michelle.

The principles on this subject are stated in sections 314, 314A, 315, and 320 of the Restatement (Second) of Torts (1965). Section 314 states the general rule:

The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.

*See Olson v. Ische,* 343 N.W.2d 284 (Minn. 1984).

■ The protection of a third person (Michelle) from another (Nancy) can take the form of action involving the third person, such as removing Michelle from the van, or action involving control of the tortfeasor (preventing Nancy from driving). Section 314A of the Restatement deals with the former and gives the exceptions to the general rule in that situation. The exception which plaintiffs apparently endeavor to bring themselves within is stated in paragraph (4) of the section: "One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities of protection is under [a duty to the other to protect against unreasonable risk of physical harm]." The illustrations given in the section consist of a railroad's obligation to a passenger in a train, a hotel's obligation to a guest, an invitee in a store, a patron of a theatre, a prisoner in a jail, and a child in a school—all situations in which the law imposes a duty on the actor to protect the other person. *See also Pirkle v. Oakdale Union Grammar School District,* 40 Cal.2d 207, 253 P.2d 1 (1953) (kindergarten pupil); *Barbarisi v. Caruso,* 47 N.J.Super. 125, 135 A.2d 539 (1957) (grandmother volunteering to look after child). Bogle does not fit into any of those categories, and plaintiffs are required to contend that Bogle is in the situation of one who "voluntarily takes the custody of another"—Michelle.

Sections 316 to 319 deal with exceptions to the general rule with reference to con-

trol of the tortfeasor (Nancy) for the protection of the third person (Michelle). These exceptions involve various relationships which are not involved here such as parent and child, master and servant, and custodian and insane person. Section 320 is the counterpart of section 314A(4) and states an exception when one is required by law to take or voluntarily takes custody of another—the exception that plaintiffs endeavor to bring themselves within. Again the relationships in which one is "required by law" to take custody of another involve "a sheriff or peace officer, a jailer or warden of a penal institution, officials in charge of a state asylum or hospital for the criminally insane, or to teachers or other persons in charge of a public school. The duty is also applicable to persons conducting a private hospital or asylum, a private school, and to lessees of convict labor." § 320, Comment *a*. As Bogle does not fit into these kinds of relationships, plaintiffs are again required to contend that Bogle is in the situation of one who "voluntarily takes the custody of another".

Plaintiffs' case against Bogle thus depends on whether a fact issue exists that Bogle took custody of Michelle. *Gruener v. City of Cedar Falls*, 189 N.W.2d 577, 580 (Iowa 1971). Lengthy depositions were taken of the witnesses to the facts. We have scrutinized all of those depositions as well as the pleadings and answers to interrogatories. A question of fact does not exist which would permit a jury could find or infer that Bogle took custody of Michelle. The district court should have sustained Bogle's motion for summary judgment against plaintiffs, and let trial go forward on plaintiffs' claims against the owner and the estate of the deceased operator of the van, and against the Mincks who provided the beer.

We return the case to district court for further proceedings.

REVERSED AND REMANDED.

All Justices concur except McGIVERIN, HARRIS, CARTER and WOLLE, JJ., who dissent in part and concur in part.

McGIVERIN, Justice (dissenting in part and concurring in part).

I respectfully dissent from division I and concur in division II of the majority opinion.

I do not believe we should judicially impose liability on a "social host" even under the criteria delineated by the majority. This monumental change in Iowa's tort law runs counter to the judgment of the General Assembly, the elected legislators of the people. It is a body much better equipped than we to consider and pass on the broad social policy questions involved. It is difficult to imagine how the legislature could have made it plainer that it has preempted the field and has chosen to make for itself the social decision present here.

An examination of the history of the Iowa dram shop statutes convinces me that the legislature has already decided against the position taken by the majority. Also, there are several other reasons for my dissent concerning division I of the majority opinion.

The district court correctly sustained the motion, filed by defendants Mincks, to dismiss the portion of the petition directed at them.

I. Originally, our common law did not recognize any right of action based on the giving or selling of intoxicating liquor. *See Snyder v. Davenport*, 323 N.W.2d 225, 226 (Iowa 1982). In 1862, the legislature abrogated the common-law rule by creating a statutory civil right of action against "any person" who furnished liquor illegally. *See* 1862 Iowa Acts 50. That statute remained in place for several decades. It did not, by its terms, limit the liability it created to only liquor licensees or permittees, and this court refused to so limit it in *Williams v. Klemesrud*, 197 N.W.2d 614, 616 (Iowa 1972), in which the statute (then Iowa Code section 129.2) was held to allow recovery against a person who illegally furnished liquor, even though that person was neither a licensee nor a permittee.

In 1963 the legislature passed another statute providing for civil liability of liquor

licensees and permittees who served a person to the point of intoxication, or who served an intoxicated person. *See* 1963 Iowa Acts ch. 114, § 29, *as amended by* 1963 Iowa Acts ch. 115, § 8. (In *Williams* we held that the enactment of the 1963 statute Iowa Code section 123.95), which treated only the liability of licensees and permittees, did not repeal or abrogate the broader "any person" liability previously created by section 129.2.

Thus, at one time Iowa had two dram shop statutes, one providing for liability of licensees and permittees and one providing for liability of any person who illegally furnished liquor. This could include a social host.

Apparently dissatisfied with this state of affairs, the legislature in 1971 in the "Liquor and Beer Control" act expressly repealed both sections 129.2 and 123.95. *See* 1971 Iowa Acts ch. 131, § 152. At the same time it enacted a new dram shop statute with liability limited to licensees and permittees. *See* 1971 Iowa Acts ch. 131, § 92, *now codified as* Iowa Code § 123.92 (1985). In discussing this legislative action obviously aimed at restricting dram shop liability to licensees and permittees only, we said in *Williams*, 197 N.W.2d at 616, "it is apparent that cases such as this [i.e., attempting to impose dram shop liability on one who is neither a licensee or permittee] will not arise in the future."

The majority unfortunately does not find this conclusion so apparent as did the *Williams* court. By ignoring *Williams* and the history of our dram shop statutes the majority manages to arrive at a result which the General Assembly no doubt thought it had in 1971 precluded: imposition of liability on a nonlicensee and nonpermittee based on the illegal furnishing of intoxicants.

Rather than reach a result so patently contrary to the legislative intent on this action, the better course is to accord the General Assembly the deference owed to it on matters of social policy.

The limitation by the legislature of the parties, licensees and permittees, to be held liable for "selling or giving" intoxicants "was not mere inadvertence." *Nelson v. Restaurants of Iowa*, 338 N.W.2d 881, 884 (Iowa 1983).

II. For the reasons above stated, the majority of this court was wrong in *Haafke v. Mitchell*, 347 N.W.2d 381, 388 (Iowa 1984), in stating that the current dram shop act did not preempt liability in this field and in allowing a common law negligence claim based on section 123.49(1) against employees of a licensee.

The dissent by Justice Harris in *Haafke*, 347 N.W.2d at 391–92, accurately states the principles that should have controlled the issues raised in *Haafke*.

This court in *Haafke* fashioned a negligence claim in a commercial setting against the *employees* of a licensee based on alleged violation of section 123.49(1), a criminal statute, for the *sale* of intoxicants to an intoxicated person. That negligence action should not have been allowed in view of the legislative policy choice made in 1971 which preempted this liquor area and confined liability to licensees and permittees. A remedy for a section 123.49(1) violation should have been restricted to its criminal sanction. *See* Iowa Code section 123.50(1).

The majority here relies upon *Haafke* and *Lewis v. State*, 256 N.W.2d 181 (Iowa 1977), to reach its result. For the reasons stated above, I believe *Haafke* should be overruled as contrary to the public policy of this state. Neither does *Lewis* provide a firm base for today's expansion of liability to nonlicensees and nonpermittees. As we noted in *Snyder v. Davenport*, 323 N.W.2d at 226–27, the facts in *Lewis* arose when the section 129.2 "any person" dram shop statute was still in force.

III. The majority in the present case now builds on and embellishes the *Haafke* holding and section 123.49(1) to impose civil liability on the "social host" who negligently *gives* intoxicants to a person.

I agree with the New York court that stated:

Extending liability to non-sellers would open a virtual Pandora's box to a wide range of numerous potential defendants

when the Court does not believe that the legislature ever intended to enact a law that makes social drinking of alcoholic beverages and the giving of drinks of intoxicating liquors at social events actionable.

*Edgar v. Kajet,* 84 Misc.2d 100, 103, 375 N.Y.S.2d 548, 552 (Sup.Ct.1975), *aff'd,* 55 A.D.2d 597, 389 N.Y.S.2d 631 (1976).

The only other state that has imposed liability on the "social host" by judicial decision that has not been abrogated is New Jersey. This occurred in *Kelly v. Gwinnell,* 96 N.J. 538, 476 A.2d 1219 (1984), a four-to-three decision. Even that case is readily distinguishable because New Jersey has no dram shop act. Therefore, the *Kelly* court implied that the absence of a dram shop statute, with its specific definitions of liability and who is liable, gave the court more freedom to consider important public policy issues in reaching its decision.

We do not have such freedom here because the legislature made its clear policy decision in 1971 and we should abide by it. We should not impose liability on the dram shop "social host" ("any person") after the legislature chose not to do so.

IV. The other decision wherein an appellate court imposed liability on a "social host" is *Coulter v. Superior Court of San Mateo County,* 21 Cal.3d 144, 145 Cal.Rptr. 534, 577 P.2d 669 (1978). However, the California legislature abrogated that decision five months later. *See Cartwright v. Hyatt Corp.,* 460 F.Supp. 80, 81 n. 5 (D.D. C.1978).

The California legislation clearly outlines the rights of third parties concerning social hosts and vendors who serve intoxicants. California Civil Code section 1714(b) (West Supp.1985) provides that the *consumption* of alcoholic beverages, rather than the *furnishing* of same, is the proximate cause of injuries inflicted upon another by an intoxicated person. Section 1714(c) provides social hosts will not be liable to either their guests or to those who are injured by their guests for serving alcoholic beverages. Other relevant provisions are California Business and Professions Code §§ 25602(a) and (b) and 25602.1 (West Supp.1985).

V. Finally, the allowance of a claim here against a social host in the context of the intoxicated person who drives a motor vehicle will open the door for a plethora of claims in other fields by analogy to the present decision. It would be no great leap from the majority's holding to make the social host civilly responsible for the injury done by his or her intoxicated guest in assaults, sexual abuse, or other criminal acts that might occur after the guest has left the hospitality of the social host. Such a result is easily reached even though the majority has attempted to tighten its criteria for liability of the social host as much as possible.

The better choice, which the majority refuses to take, is to simply acknowledge the court was wrong in *Haafke* and, therefore, refuse to judicially impose liability on the social host when the legislature chose not to do so.

For the several reasons above stated, I would affirm the district court's sustention of the motion to dismiss by defendants Mincks. I agree with the majority that the district court should have sustained Bogle's motion for summary judgment against plaintiffs.

HARRIS, CARTER and WOLLE, JJ., join in this dissent in part and concurrence in part.