James FUHRMAN and Sharon Fuhrman, Husband and Wife, Edward Gehring and Marianne Gehring, Husband and Wife, Donald L. Delong and Lucile M. Delong, Husband and Wife, and Howard C. Williams and Jo Ann Williams, Husband and Wife, Appellants,

v.

TOTAL PETROLEUM, INC., Appellee,

v.

Diane REIFENSTAHL,
Third-Party Defendant.

No. 85–1564.

Supreme Court of Iowa.

Jan. 14, 1987.

Thomas D. Hobart of Meardon, Sueppel, Downer & Hayes, Iowa City, and Thomas Wynia, Story City, for appellants.

Raymond R. Stefani and Richard A. Stefani of Gray, Stefani & Mitvalsky, Cedar Rapids, for appellee.

HARRIS, Justice.

Few problems in recent years have so divided this court as those which relate to tort liability based on the furnishing of intoxicants, especially when the facts fall outside of Iowa's dramshop statute. This appeal presents another request that we fashion a common law tort theory to extend the right of recovery beyond the dramshop statute. (Stated another way, the question here is whether the legislature, in enacting the dramshop law, intended to preempt the field and set the metes and bounds of recovery rights in tort suits based on the sale or furnishing of intoxicants. ı We recently faced the same question in *Connolly v. Conlan*, 371 N.W.2d 832 (Iowa 1985). As has become almost traditional in questions on this troublesome point, we were sharply divided, but our holding was certainly clear:

> [T]he legislature expressly kept licensees and permittees under the dram shop act. In doing so, it struck for them a balance: They would remain strictly liable under the acts and would continue to be compelled to post financial responsibility. But, under the scheme, their liability was limited to serving persons "while he or she is intoxicated" or "to the point where

he or she is intoxicated." The liability ended there.

Social policies might support the expanded liability suggested by the plaintiffs. But the legislature was not persuaded by them, and we are bound to adhere to the limitations of the legislative plan.

371 N.W.2d at 833.

Less than three months after *Connolly* was filed the trial court here was presented with a case which was controlled by it. Under the circumstances of course the trial judge had only two options; she could either apply *Connolly* or else refuse to. *Connolly* was applied and the sole question on appeal is whether this application was error. It was error only if we change our minds and overrule *Connolly*, which we are not inclined to do.

■ By reason of the posture of this appeal the facts alleged by plaintiffs can be stated succinctly. The plaintiffs were injured when their car collided with one driven by a seventeen-year-old juvenile, Diane Moss Reifenstahl (a third-party defendant who is not involved in this appeal). It is alleged that Reifenstahl was intoxicated after having been sold beer by defendant Total Petroleum, Inc. Plaintiffs however admit they have no evidence that Reifenstahl was or became intoxicated at the time the beer was purchased or consumed at Total. After purchasing the beer Reifenstahl left the store and drove to a nearby park where the beer was consumed. It was after this that she resumed driving and the accident occurred. The facts therefore fall outside the dramshop law because it is not claimed that, while on the premises, Reifenstahl was or became intoxicated.

For three reasons we adhere to our *Connolly* decision.

■ I. We think *Connolly* was rightly decided. The question is not whether we privately agree with the legislative parameters of the dramshop act. The question rather is whether the legislature did in fact set them. In *Connolly* we cited the legislative history of the act as first traced in *Nelson v. Restaurants of Iowa, Inc.*, 338 N.W.2d 881, 883–84 (Iowa 1983). That history led us to conclude that the legislature preempted the field of dramshop torts. We adhere to the view that the legislature deliberately prescribed not only the extent but also the limits of dramshop liability.

II. The most recent legislation on the subject, enacted since the filing of our *Connolly* opinion, does not signal legislative surrender to judicial proclivities to innovate in the area of dramshop liability. Iowa Code section 123.49(1) was amended for the expressed purpose of overturning our holding in *Clark v. Mincks*, 364 N.W.2d 226 (Iowa 1985).

In *Mincks* we created a common law right of recovery against social hosts, who of course are not covered under the statutory dramshop scheme. We did so by appending the recovery to a criminal provision in the beer and liquor control act. *See* Iowa Code § 123.49(1) (prohibits sale or furnishing of beer to intoxicated persons).

The legislative response was prompt and its message was clear. Iowa Code section 123.49 was amended by adding the following language:

a. A person other than a person required to hold a license or permit under this chapter who dispenses or gives an alcoholic beverage, wine, or beer in violation of this subsection is not civilly liable to an injured person or the estate of a person for injuries inflicted on that person as a result of intoxication by the consumer of the alcoholic beverage, wine, or beer.

b. The general assembly declares that this subsection shall be interpreted so that the holding of *Clark v. Mincks*, 364 N.W.2d 226 (Iowa 1985) is abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages, wine, or beer rather than the serving of alcoholic beverages, wine, or beer as the proximate cause of injury inflicted upon another by an intoxicated person.

1986 Iowa Acts ch. 1211, § 11.

■ Plaintiffs' appeal in the present case is an invitation for us to undertake another

*Mincks*-type venture, not under the auspices of section 123.49(1), but under a similar criminal provision. The point is exactly the same; we are again requested to jerry-rig a common law tort theory beyond the confines of the statutory dramshop law. This time the expanded theory would be appended to section 123.47 (prohibiting sale or furnishing of spirits to persons under legal age).

The intervening legislative message demands rejection, not acceptance, of plaintiffs' theory. The amendment announces and stresses a legislative policy of reverting to our "prior judicial interpretation" which placed tort liability on the consumer of the alcohol, not on the furnisher. *See Cowman v. Hansen,* 250 Iowa 358, 368, 92 N.W.2d 682, 687 (1958).

■ III. Finally, under the doctrine of stare decisis, we should now be greatly less inclined to extend liability than we were in *Connolly.* It is sometimes contended that frequent shifts and changes in the law, especially as given in appellate opinions, are to be expected in matters upon which we so strongly and obviously disagree and that a lawyer or judge accepts a closely divided majority decision at considerable peril. We often reexamine prior precedents and occasionally change them. There nevertheless comes a point at which it is clearly in the public interest for precedents to have a certain reliability. American appellate decisions should not be, as a recent critic somewhat cynically charged, entirely biodegradable. In his epic addresses on "The Nature of the Judicial Process," Benjamin N. Cardozo said:

> [T]he judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight—errant, roaming at will in pursuit of his own idea of beauty or of goodness. He is to draw his inspiration from consecrated principles.

When we refuse to adhere to our own recent precedents it adds another dimension to the weighty problems encountered by the bench and bar.

The trial court was correct in applying our holding in *Connolly.*

IV. Plaintiffs also contend that Iowa Code section 123.92, not on its face but as applied in *Connolly,* unconstitutionally denies them equal protection of the laws. The challenge is subject to the rational basis test. *Bishop v. Eastern Allamakee Community School District,* 346 N.W.2d 500, 505 (Iowa 1984). We think the interpretation easily passes muster.

■ The legislative plan calls for a carefully limited class of persons to whom recovery rights were given. *Robinson v. Bognanno,* 213 N.W.2d 530, 532 (Iowa 1973). The purpose of the act was to impose strict liability for a tort which would be extremely difficult to prove by traditional methods. It was rational for the legislature to limit this strict liability to situations where the operator served persons who were or who thereby became intoxicated. *Seivert v. Resnick,* 342 N.W.2d 484, 485 (Iowa 1984).

AFFIRMED.

All justices concur except SCHULTZ, J., REYNOLDSON, C.J., LARSON and LAVORATO, JJ., who dissent.

SCHULTZ, Justice (dissenting).

I believe that this appeal makes a simple and fair request. Plaintiffs ask that they be afforded the right to pursue a common law negligence action against a licensed commercial seller of beer, based on an illegal act not covered under our dram shop statute. As I will point out later, we have approved such an action against an employee of a state operated liquor store and against an employee of a tavern keeper. The trial court and the majority rely upon our ruling in *Connolly v. Conlan,* 371 N.W.2d 832 (Iowa 1985) to afford a licensee, who profits from the illegal sale, a defense not available to the employee. The majority has perceived an intent by the legislature in enacting the dram shop statute to preempt common law liability for an illegal sale that falls outside the proscrip-

tions of the act. I fail to receive the same subliminal message that by giving the public the benefit of strict liability for one illegal act the legislature intended to prevent liability on a common law basis for another illegal act. I prefer not to blame the legislature for this unfair result when the legislation does not speak to the civil consequences for the illegal sale of beer or liquor to a minor. I believe that we need to reverse our holding in *Connolly,* as it was wrong. Because I feel it is important to examine past case law, I abandon brevity and trace the history of our decision.

Until 1977, our common law followed what was the general rule in most jurisdictions: that no negligence action existed against a supplier of intoxicants independent of statutory provisions for dram shop liability. The rule was based on the premise that a sale or gift of intoxicants could not be the proximate cause of injuries inflicted by the intoxicated recipient on a third party; causation flowed from the consumption, rather than the sale, of the intoxicant. *See Cowman v. Hansen,* 250 Iowa 358, 368, 92 N.W.2d 682, 687 (1958).

This rule of no causation from the sale of intoxicants was judicially overruled in *Lewis v. State,* 256 N.W.2d 181, 191–92 (Iowa 1977). In *Lewis* the plaintiff, injured in an accident with an intoxicated minor, sued a state liquor commission employee, asserting that the action was a result of a negligent and wrongful sale of intoxicating liquors to the minor.[1] We held that "the sale or furnishing of intoxicating liquor in violation of section 123.43 may well be the proximate cause of injuries sustained as a result of an intoxicated individual's tortious conduct and *liability may thus be imposed upon the violators in favor of the injured, innocent third party.*" *Id.* (emphasis added).

Following *Lewis,* our case law addressing common law actions arising from the distribution of liquor and beer has been marked by disagreement among the members of this court. We have never overturned the rules announced in *Lewis* by a unanimous court, but have differed as to the extent that our dram shop provision, Iowa Code section 123.92, preempts common law theories of recovery arising from the distribution of intoxicants. Generally, these cases arise from the violation of criminal statutes prohibiting dispensing of intoxicants in certain situations, and also involve the applicability or preemptive effect of the dram shop provision.

Iowa Code section 123.47 provides for criminal sanctions against a person who "shall sell, give, or otherwise supply alcoholic liquor or beer to any person knowing or having reasonable cause to believe that person to be under legal age." Iowa Code section 123.49(1) likewise provides that "[n]o person shall sell, dispense, or give to any intoxicated person, or one simulating intoxication, any alcoholic liquor or beer," and section 123.50 provides criminal penalties for violation of the prohibitions of section 123.49. Section 123.92 provides in part:

> Every husband, wife, child, parent, guardian, employer or other person who shall be injured in person or property or means of support by any intoxicated person or resulting from the intoxication of any such person, shall have a right of action, severally or jointly, against any licensee or permittee, who shall sell or give any beer or intoxicating liquor to any such person while the person is intoxicated, or serve any such person to a point where such person is intoxicated, for all damages actually sustained.

I now examine our cases since *Lewis* that are germane to the issues presented here.

In *Snyder v. Davenport,* 323 N.W.2d 225 (Iowa 1982), plaintiff sought a common law recovery for an illegal sale to an intoxicated person. We held that the dram shop act provided a plaintiff's exclusive remedy because the grounds of liability in that case were identical to the grounds enumerated

---

**1.** Iowa Code section 123.43 (1966), subject to certain inapplicable exceptions, provided that "no person shall sell, give or otherwise supply liquor to any such person under the age of twenty-one years."

in section 123.92, and consequently fell squarely within the statutory scheme. *Id.* at 227. We reserved the question whether a common law action may be maintained in situations in which the dram shop act is inapplicable. *Id.* at 228 n. 2.

In *Haafke v. Mitchell*, 347 N.W.2d 381 (Iowa 1984), the question reserved in *Snyder* remained unanswered, although the issue of common law liability by a licensee for illegal sale to a minor was presented. Four members of our court voted to extend the *Lewis* holding, allowing for common law liability of the licensee for acts not included in section 123.92. *Id.* at 386–88. One took no part, and four members of the court held the view that section 123.92 preempted all other actions arising from sales of intoxicants by a licensee/permittee, and thus limited the liability of licensees and permittees to the statutory provision. *Id.* at 391–92. On a related issue in *Haafke* we held that the licensee's employees may be held liable under common law for negligence in furnishing liquor to a minor, based on violations of statute and ordinance. *Id.* at 388, 390–91.

We addressed another claim against a licensee arising from an employee's action other than an illegal sale in *Golden v. O'Neill*, 366 N.W.2d 178 (Iowa 1985). We rejected defendant's claim of preemption by the dram shop statute, and held that a bar owner may be held liable for assault and battery by an employee, arising out of a physical attack by a bartender, as well as for negligence both in not providing safe premises and in employing persons with a propensity to injure people when consuming intoxicants. We held that section 123.92 did not preempt a plaintiff's cause of action against a licensee when the action was based on these grounds. *Id.* at 179–80.

The predicament we face, caused by our recognition of common law liability for damage caused by an illegal dispensation of intoxicants on one hand and our rejection of that liability in certain situations (due to statutory preemption when licensed vendors are involved) on the other hand, is best illustrated by the next two cases I discuss. In *Clark v. Mincks*, 364 N.W.2d 226 (Iowa 1985), a 5–4 decision, we extended the *Lewis* doctrine concerning common law negligence and causation by holding that a social host may be held liable for common law negligence arising from dispensing intoxicants to an intoxicated person. *Id.* at 231. Shortly thereafter, in *Connolly v. Conlan*, 371 N.W.2d 832 (Iowa 1985), by a 5–4 ruling we refused to extend the *Haafke* liability to a licensee for the dispensation of liquor or beer to a minor. *Id.* at 833. We held that, under our statutory scheme, "their liability was limited to serving persons 'while he or she is intoxicated' or 'to the point where he or she is intoxicated.' The liability ended there." *Id.*

This summary of our holdings outside the parameters of the dram shop act is revealing. A licensee or permittee may be liable for the assault and battery of a patron by an employee and for negligence in providing unsafe premises for patrons by hiring employees who have vicious tendencies when drinking. On the other hand, such vendor is not civilly responsible in a negligence action for committing the criminal act of sale of intoxicants to minors. While the licensee or permittee avoids civil liability for sales to minors, the licensee's employee, who may be acting under the direct orders of the employer, is liable for such a sale, as is a state liquor employee and presumably any other person who has violated the law.[2] It is ironic that the one

---

2. The legislature recently amended section 123.49(1) by adding subsections (a) and (b) which provide as follows:

    a. A person other than a person required to hold a license or permit under this chapter who dispenses or gives an alcoholic beverage, wine, or beer in violation of this subsection is not civilly liable to an injured person or the estate of a person for injuries inflicted on that person as a result of intoxication by the consumer of the alcoholic beverage, wine, or beer.

    b. The general assembly declares that this subsection shall be interpreted so that the holding of *Clark v. Mincks*, 364 N.W.2d 226 (Iowa 1985) is abrogated in favor of prior

who stands to profit most by illegal sale to minors is shielded from liability by judicial interpretation.

Our seemingly inequitable and conflicting results arise from difficult problems created in part by less than perfect legislation. In an obvious attempt to protect the public from injuries, our legislature has provided criminal sanctions for two evils: the first is the sale of intoxicants to intoxicated persons or sale to persons to the point of intoxication; the second is sale to minors. The results of either of these acts are not only harmful to the persons involved, but may have disastrous consequences to any person who comes in contact with either the inebriated adult or the minor who, predictably, becomes inebriated because of the sale. The legislature has provided a civil solution to only one of the two evils by the dram shop section. It provides no remedy for a person injured because beer or liquor is dispensed to a minor by a licensee. The conflicting messages from this legislation have caused our dilemma. Construing section 123.92 to preclude a common law action for illegal sale to a minor would lead to an inconsistent result. I believe that attributing such an intent to the legislature is unwarranted. I would decline to so construe the statute, in the absence of express language compelling preclusion of a common law cause of action. We should accept the responsibility of recognizing a common law negligence action in cases outside the scope of the dram shop act. If this does not meet with legislative approval, the legislature can speak clearly to ban this action.

We are not alone in our circuitous and unsettled approach to this problem. In our neighbor state of Wisconsin, the court at one time held that the dram shop act preempted the tort field as to vendors, and that, outside the statute, the common law rule was one of no liability. *Farmers Mut.*

judicial interpretation finding the consumption of alcoholic beverages, wine, or beer rather than the serving of alcoholic beverages, wine, or beer as the proximate cause of injury inflicted upon another by an intoxicated person.

*Auto. Ins. Co. v. Gast,* 17 Wis.2d 344, 117 N.W.2d 347, 350 (1962). They soon altered their stance in *Garcia v. Hargrove,* 46 Wis.2d 724, 176 N.W.2d 566 (1970), when they declined to consider the preemption issue; they determined that public policy was the controlling consideration, but that the vendor was not liable on a public policy basis. *Id.,* 176 N.W.2d at 570–72. They addressed the problem again in *Olsen v. Copeland,* 90 Wis.2d 483, 280 N.W.2d 178 (1979), holding that the policy reasons behind the common law rule of no liability still existed, and that any change in the law with regard to this policy question was better dealt with by the legislature. *Id.,* 280 N.W.2d at 180–81. In *Sorensen v. Jarvis,* 119 Wis.2d 627, 350 N.W.2d 108 (1984), however, the Wisconsin court decided that it had the authority to change, and did change, the common law to create a cause of action against the vendor for sale of intoxicants to minors. *Id.,* 350 N.W.2d at 112. The Wisconsin court again rejected a contention that its dram shop statute, which was not applicable to the particular sale in that case, preempted the field of tort liability against a tavern keeper, stating that *Garcia* had overruled *sub silentio* the preemption rationale of *Gast. Id.,* 350 N.W.2d at 113–15. They applied this ruling to social hosts in *Koback v. Crook,* 123 Wis.2d 259, 366 N.W.2d 857, 861 (1985), and *Harmann v. Hadley,* 128 Wis.2d 371, 382 N.W.2d 673, 676 (1986). After groping with the problem for several years, the Wisconsin court has shifted its views and amended its common law to provide an injured party not covered under its dram shop act a cause of action against a vendor for an illegal sale of liquor to a minor, when the sale results in the plaintiff's injury. I too believe that it is our responsibility to create and apply common law principles when the legislature has not addressed a problem under the dram shop statute.

1986 Iowa Acts ch. 1211, § 11. This action and the trial were prior to the amendment, which was effective July 1, 1986. I do not speak to the effect of these amendments.

In response to the injuries caused by the illegal distribution of intoxicants, other jurisdictions recently have developed common law remedies. One writer has traced the rule of no liability to its abrogation in *Rappaport v. Nichols*, 31 N.J. 188, 156 A.2d 1 (1959), and has produced a compendium of cases in the various states supporting the rationale of common law liability. Rinden, *Judicial Prohibition? Erosion of the Common Law Rule of Non-Liability for Those Who Dispense Alcohol*, 34 Drake L.Rev. 937, 946–56 (1985–86). The writer concluded that "courts have been moving in an increasingly more liberal direction in permitting causes of action against liquor purveyors in cases in which plaintiffs cannot resort to a state dram shop act." *Id.* at 956.

Other courts have addressed, with mixed results, the question whether their dram shop acts preempt any common law causes of action for negligence in the illegal sale of liquor. The Vermont Supreme Court, for example, has rejected the principle of preemption totally and held that, in addition to the dram shop act, there exists a common law cause of action for negligence. *Langle v. Kurkul*, 146 Vt. 513, 510 A.2d 1301 (1986). The court reasoned that the dram shop act, in providing a cause of action in strict liability, did not preempt the remedy under common law, because the strict liability does not address a cause of action in negligence and cannot be said to foreclose a common law action that is not repugnant to the state's constitution or laws. *Id.*, 510 A.2d at 1303. The Illinois Supreme Court, in contrast, took the position that the dram shop act provides the exclusive remedy for all sales by licensees, and thus no common law action may be maintained. *See, e.g., Cunningham v. Brown*, 22 Ill.2d 23, 174 N.E.2d 153, 157 (1961).

A number of additional jurisdictions have held their dram shop acts to be exclusive remedies against the vendors; however, their dram shop statutes, unlike ours, are broad enough to allow liability for *all* illegal selling of intoxicants, including sale to minors. *See, e.g., Browder v. Interna-* *tional Fidelity Ins. Co.*, 413 Mich. 603, 321 N.W.2d 668, 673 (1982); *Holmquist v. Miller*, 367 N.W.2d 468, 470–72 (Minn.1985). Despite its acknowledgement that the dram shop act was the exclusive remedy for an illegal sale by a licensed vendor, the Michigan court held in *Longstreth v. Gensel*, 423 Mich. 675, 377 N.W.2d 804 (1985), that their dram shop act, which covered only licensees, did not preempt a common law action against a social host. *Id.*, 377 N.W.2d at 808–09. These decisions are consistent with our ruling in *Snyder v. Davenport*, in which we decided that the dram shop act provides the exclusive remedy when the alleged wrong falls within the statutory scheme of the dram shop act. 323 N.W.2d at 227.

In the present case we are confronted with a situation that falls outside of the parameters of the dram shop act: the illegal sale of intoxicants to a minor by a licensee. In *Connolly*, the majority of our court extended the principles of preemption to all sales by licensees, depriving the plaintiff of a cause of action for the wrongful sale of intoxicants to a minor. Recently, the Maine court reviewed our decision in *Connolly* and rejected our holding of preemption. *Klingerman v. Sol Corp.*, 505 A.2d 474, 477 (Me. 1986). The Maine court was unwilling to conclude that its dram shop statute is an exclusive remedy, absent express language to that effect. *Id.* (citing *Kowal v. Hofher*, 181 Conn. 355, 436 A.2d 1, 2 (1980)). *See also Crespin v. Largo Corp.*, 698 P.2d 826, 829 (Colo.App.1984) (where dram shop act requires notice, act does not supersede or preempt common law action based on sale to intoxicated person when notice not given); *Elder v. Fisher*, 247 Ind. 598, 217 N.E.2d 847, 853 (1966) (in absence of special provision, common law negligence applies to cases involving intoxicating liquor); *Dynarski v. U–Crest Fire Dist.*, 112 Misc.2d 344, 447 N.Y.S.2d 86, 87–88 (1981) (dram shop act not applicable to drinking at social occasions, but negligence action may be brought); *Mason v. Roberts*, 33 Ohio St.2d 29, 294 N.E.2d 884, 887 (1973) (dram shop act not exclusive

remedy because health, safety and welfare of public must be protected; common law action permitted when intoxicated person not listed on "blacklist" as required for dram shop act liability); *Langle v. Kurkul,* 510 A.2d at 1303; *Sorensen v. Jarvis,* 350 N.W.2d at 113–15.

We are now faced with deciding whether to follow our holding in *Connolly* and hold again that the dram shop act preempts any common law action against licensees. The common law is developed by the courts and is a part of our responsibility. That responsibility includes reevaluation of previous decisions, especially those based on matters of public policy, and in reevaluating past decisions we do not depart from the proper role of the judiciary. As Mr. Justice Cardozo observed, regarding changes in the common law:

> This is not usurpation. It is not even innovation. It is the reservation for ourselves of the same power of creation that built up the common law through its exercise by the judges of the past.

*Mease v. Fox,* 200 N.W.2d 791, 797 (Iowa 1972) (quoting B. Cardozo, *The Growth of the Law* 136 (1924)).

I believe that the position taken by the Maine court in *Klingerman* is more equitable and appropriate than our holding in *Connolly;* we too should hold that the dram shop act, lacking express language to the contrary, does not preempt the common law in fact situations not covered by the statute. The remedy in section 123.92 simply does not address the wrong claimed here. Despite our pronouncement in *Connolly,* I do not believe the legislature intended to prevent a common law remedy for the wrong they proscribe in section 123.47.

In summary, I would abandon the majority opinion in *Connolly* and reverse the ruling of the trial court and remand.

REYNOLDSON, C.J., and LARSON and LAVORATO, JJ., join this dissent.

