Larry EDDY, Cheryl Eddy, and Alyssa Eddy, a Minor by Her Parent and Next Friend, Cheryl Eddy, Appellants,

v.

CASEY'S GENERAL STORE, INC., an Iowa Corporation, Jack Dean Johnson, and Dennis Hobbs, Defendants,

and

Risco, Inc., Appellee.

No. 90–1661.

Supreme Court of Iowa.

May 13, 1992.

Steven H. Shindler, Thomas T. Tarbox, and William B. Serangeli of Smith, Schneider, Stiles, Mumford, Schrage, Zurek, Wimer, and Hudson, P.C., Des Moines, for appellants.

Jeffrey A. Boehlert and Douglas A. Haag of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker, and Ordway, Des Moines, for appellee.

McGIVERIN, Chief Justice.

The main question here is whether we should allow a new common law claim against a liquor licensee that sold beer to an adult for off-premises consumption. The beer ultimately was consumed by a third person who drove a motor vehicle and injured plaintiffs. We affirm the district court's ruling that denied plaintiffs' claims against the licensee.

I. *Background facts and proceedings.* Plaintiffs Larry Eddy, his wife Cheryl Eddy, and their daughter Alyssa Eddy (Eddys) appeal from the district court's ruling which sustained a motion for summary judgment by defendant Risco, Inc., the liquor licensee. *See* Iowa R.Civ.P. 237. The parties agreed in the district court, for purposes of the summary judgment motion, that the facts in substance are as follows. Jack Johnson and Dennis Hobbs were roommates. At approximately 10:00 a.m. on October 14, 1989, Johnson came home and found Hobbs drinking beer while watching football on television. Hobbs remained in the house drinking beer while Johnson went out into the back yard to work. At about 3:00 or 4:00 in the afternoon, Johnson came back inside and drank

some of Hobbs' beers. After the two finished the beers, they proceeded to Casey's General Store, Inc., in Ames, which was owned by defendant Risco, Inc.

Upon arrival at the Casey's store, Hobbs went inside the store to purchase more beer. Johnson remained outside in his truck. Hobbs proceeded immediately to the cooler where he obtained a twelve-pack of beer. He did not open or consume any of the beer while in the store. After he paid for the beer, Hobbs and Johnson left the store area. They then opened the beer and began to drink it while they were traveling to Story City. The two apparently stopped at a brother-in-law's farm while driving to Story City and had some beer while at the farm. Shortly after they resumed their trip, with Johnson driving, the vehicle ran through a stop sign striking the Eddy car. Larry Eddy sustained personal injuries from the collision.

After the accident, Johnson was charged with driving while under the influence of alcohol and for driving under a suspended license. At his trial for these charges, an expert estimated that Johnson's blood alcohol content at the time of the accident was .135. Johnson was convicted of these charges. Plaintiffs Eddy thereafter brought this action for personal injuries and loss of consortium against Casey's General Store, Inc., Jack Johnson, Dennis Hobbs, and Risco, Inc. Only plaintiffs' claims against Risco are involved in this appeal.

Plaintiffs' claims against defendant Risco were based upon Iowa's Dramshop Act, Iowa Code section 123.92 (1989), and common law negligence. The district court thereafter sustained Risco's summary judgment motion and dismissed plaintiffs' petition as to Risco. *See* Iowa R.Civ.P. 237(c). Eddys appealed, and we now consider the issues raised.

■ II. *Dramshop claim.* Plaintiffs contend they are entitled to recover money damages from defendant Risco pursuant to our dramshop act, which provides, in pertinent part:

Any person who is injured in person or property or means of support by an in-

toxicated person or resulting from the intoxication of a person, has a right of action for all damages actually sustained, severally or jointly, against any licensee or permittee, who *sold and served* any beer, wine, or intoxicating liquor to the intoxicated person when the licensee or permittee knew or should have known the person was intoxicated....

Iowa Code § 123.92 (emphasis supplied).

We have previously held that before a permittee or licensee may be exposed to liability under the dramshop act, a plaintiff must prove that the permittee or licensee both sold *and* served alcohol to an intoxicated person with the intent that the alcohol be consumed on the premises. *Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 347 (Iowa 1991); *see also Thorp v. Casey's General Stores, Inc.*, 446 N.W.2d 457, 462 (Iowa 1989). It is undisputed that Risco never "served" any beer or other alcohol to Hobbs or Johnson for on-premises consumption. Also, none of the purchased beer was actually consumed on Risco's premises by Hobbs or Johnson. Accordingly, it was proper for the district court to sustain Risco's summary judgment motion as to this assignment of error.

■ III. *Equal protection claim.* The next issue plaintiffs raise is whether a construction of the dramshop act, section 123.-92, which precludes liability against licensees and permittees that only *sell* alcohol violates the equal protection clauses of the United States and Iowa Constitutions. U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 6. For the same reasons discussed at length in our recent decision in *Kelly*, 476 N.W.2d at 347–48, we hold that such a construction of the dramshop act does not violate the equal protection rights of the plaintiffs.

IV. *Common law claim.* Plaintiffs Eddy alternatively claim that they are entitled to recover from defendant Risco based upon common law negligence. More specifically, Eddys assert that Risco breached a duty of care to them by selling beer to Hobbs when it knew or should have known that he was intoxicated. Defendant Risco

argues that plaintiffs may not maintain a common law claim because the dramshop act, section 123.92, preempts the field of liquor vendor liability and provides the exclusive remedy against liquor licensees and permittees for alcohol sales to adults. We agree.

**A.** This court has addressed on several previous occasions the general question of whether the dramshop act preempts common law claims against licensees and permittees. *See Nutting v. Zieser*, 482 N.W.2d 424 (Iowa 1992); *Thorp*, 446 N.W.2d at 465; *Slager v. HWA Corp.*, 435 N.W.2d 349 (Iowa 1989); *Bauer v. Dann*, 428 N.W.2d 658 (Iowa 1988); *Fuhrman v. Total Petroleum, Inc.*, 398 N.W.2d 807 (Iowa 1987); *Connolly v. Conlan*, 371 N.W.2d 832 (Iowa 1985); *Golden v. O'Neill*, 366 N.W.2d 178 (Iowa 1985); *Clark v. Mincks*, 364 N.W.2d 226 (Iowa 1985); *Haafke v. Mitchell*, 347 N.W.2d 381 (Iowa 1984); *Snyder v. Davenport*, 323 N.W.2d 225 (Iowa 1982); *Lewis v. State*, 256 N.W.2d 181 (Iowa 1977). We have repeatedly said that the dramshop act provides the exclusive remedy against those covered by the act: licensees and permittees. *See, e.g., Slager*, 435 N.W.2d at 352; *Bauer*, 428 N.W.2d at 660; *Blesz v. Weisbrod*, 424 N.W.2d 451, 452 (Iowa 1988); *Fuhrman*, 398 N.W.2d at 809; *Connolly*, 371 N.W.2d at 833. More importantly, we have consistently maintained that the dramshop act, section 123.92, preempts common law negligence actions against licensees and permittees grounded on the sale of intoxicants to an intoxicated person. *See, e.g., Snyder*, 323 N.W.2d at 227 (dramshop act usurps a common law negligence action against a licensee grounded on the sale of intoxicants to an intoxicated person in violation of Iowa Code section 123.49(1)); *see also Kelly*, 476 N.W.2d at 349 n. 2; *Slager*, 435 N.W.2d at 352; *Fuhrman*, 398 N.W.2d at 809; *Connolly*, 371 N.W.2d at 833.

We adhere to this line of precedent and conclude that a common law negligence action may not be maintained against a licensee or permittee. Stated another way, section 123.92 provides the exclusive remedy against a licensee or permittee that provides intoxicating liquor or beer to an intoxicated adult person.

We note that, in addition to our own cases, this conclusion is supported by cases from other jurisdictions holding that a dramshop act provides the exclusive remedy against licensees and permittees. *See, e.g., Parker v. Miller Brewing Co.*, 560 So.2d 1030, 1034 (Ala.1990) (although plaintiff's complaint stated no claim under civil damages or dramshop acts, common law negligence claim would not be adopted to impose liability upon permittee); *Keaton v. Kroger Co.*, 143 Ga.App. 23, 29–30, 237 S.E.2d 443, 448 (1977) (act providing a civil remedy for a parent against any person who wrongfully sells liquor to his or her child preempted the field of civil liability and actions for negligence per se); *Stevens v. Lou's Lemon Tree, Ltd*, 187 Ill.App.3d 458, 135 Ill.Dec. 58, 543 N.E.2d 293 (1989) (liquor control act provides the only remedy against tavern operators and owners); *Plamondon v. Matthews*, 148 Mich.App. 737, 743, 385 N.W.2d 273, 276 (1985) (exclusive remedy for ordinary negligence in supplying person with alcoholic beverages is provided by dramshop act); *Rowan v. Southland Corp.*, 90 Mich.App. 61, 68, 282 N.W.2d 243, 246 (1979) (dramshop act is exclusive remedy for injuries arising out of unlawful sales of alcohol by licensed retailers); *Leimkuehler v. Myers*, 780 S.W.2d 653, 655 (Mo.App.1989) (plaintiff had no claim against package liquor store operator under common law nor under statute that was limited to tavern owners who dispensed alcoholic beverages by the drink); *accord Winney v. Ransom & Hastings, Inc.*, 149 Vt. 213, 542 A.2d 269 (1988) (dramshop act provides exclusive remedy where facts of case fall within scope of act).

**B.** Our conclusion that section 123.92 provides the exclusive remedy against licensees and permittees is further supported by its history and language. Prior to enactment of the dramshop act, no common law negligence claim was allowed against a permittee or licensee arising out of the mere sale of intoxicating liquor.

*Snyder*, 323 N.W.2d at 226. *See generally* Comment *Beyond the Dram Shop Act: Imposition of Common–Law Liability on Purveyors of Liquor*, 63 Iowa L.Rev. 1282, 1298–99 (1978). The general rule was, and still is, that the *consumption* of alcohol, rather than the mere *sale* or *serving* of it, is the proximate cause of any injuries inflicted upon another by an intoxicated person. *Snyder*, 323 N.W.2d at 226; *Lewis*, 256 N.W.2d at 191. However, a claim based upon the sale and serving of alcohol was provided by the dramshop act. It is well-established that when a statute, such as our dramshop act, gives a right and creates a remedy unknown at the common law, and at the same time points to a specific method by which that liability can be ascertained and the right assessed, this method must be strictly pursued. *Snyder*, 323 N.W.2d at 227; 3 *Sutherland Statutory Construction* § 61.01, at 77–79 (4th Ed.1986).

Our dramshop act is a carefully crafted legislative scheme, having been modified on several occasions. *See, e.g.,* 1988 Iowa Acts ch. 1158, § 30; 1986 Iowa Acts ch. 1211, § 12; 1985 Iowa Acts ch. 32, § 57. We have consistently interpreted the act in a strict but careful manner, giving particular attention and deference to the legislature's intent and every word and phrase used throughout the act. *See, e.g., Kelly*, 476 N.W.2d at 346–47 (interpreting the phrase "sold and served"); *Thorp*, 446 N.W.2d at 467 (phrase "sold and served" does not mean "consume"); *Slager*, 435 N.W.2d at 352 (dramshop act applies to "licensees and permittees"); *Bauer*, 428 N.W.2d at 660 (same); *Walton v. Stokes*, 270 N.W.2d 627, 628 (Iowa 1978) (proximate cause need not be shown where plaintiff alleges injuries were "caused by an intoxicated person" rather than "resulting from the intoxication of a person"); *Lee v. Hederman*, 158 Iowa 719, 722–23, 138 N.W. 893, 894–95 (1913) (construing former dramshop act allowing recovery for injuries "in consequence of" another's intoxication); *Bistline v. Ney Bros.*, 134 Iowa 172, 180, 184, 111 N.W. 422, 425–26 (1907) (same).

For this court to formulate its own particular version of a common law negligence claim, despite the specific scheme provided by the dramshop act, would be to judicially repeal the act. *See Snyder*, 323 N.W.2d at 228 ("To adopt a common-law cause of action irrespective of [section 123.92] would be ill-advised and would render the statutory scheme inoperative."); *see also Browder v. International Fid. Ins. Co.*, 413 Mich. 603, 614, 321 N.W.2d 668, 674 (1982) (dramshop act provides exclusive remedy where legislature "carefully considered and reconsidered the dramshop act [in numerous amendments] to keep it internally balanced"); *Largo Corp. v. Crespin*, 727 P.2d 1098, 1105 (Colo.1986) (implying that state dramshop act could be considered the exclusive remedy if it were more detailed or carefully considered). Such a ruling would impose this court's conception of policy in place of the legislature's, and of course overrule our prior cases interpreting the dramshop act.

More specifically, to allow a common law claim against permittees such as defendant Risco that only *sell* alcohol exclusively for off-premises consumption would read out of the dramshop act the specific requirement that licensees and permittees must both *sell and serve* intoxicants before liability may attach. *See* Iowa Code § 123.92; *Kelly*, 476 N.W.2d at 347 (dramshop keeper must both *sell and serve* alcohol before being exposed to liability).

C. We are not unmindful of the havoc wrought by drunken drivers on our highways. However, the legislature has established a detailed scheme which determines when liability may be imposed upon sellers of alcohol. The legislature could have rationally concluded that only those licensees and permittees that sell and serve alcohol for on-premises consumption should be exposed to liability for injuries to third persons such as plaintiffs. Such licensees and permittees typically provide alcohol in open containers in their own facilities where the licensee or permittee owner or employees have the opportunity to observe patrons' consumption and behavior. However, licensees and permittees such as defendant Risco, who only sell alcohol exclusively for off-premises consumption, have no control

over their patrons once those patrons make their purchases and leave the premises. The legislature could have rationally concluded that the purposes of the dramshop act would not be furthered by imposing upon such permittees and licensees a standard of care equivalent to that imposed upon permittees and licensees that both sell and serve alcohol for on-premises consumption.

In sum, we are bound to follow the legislature's scheme, regardless of the fact that it may create a situation which leaves the present plaintiffs without statutory relief. The remedy, if any, for plaintiffs and others similarly situated lies with the legislature.

For the foregoing reasons, we hold that the dramshop act, section 123.92, provides the exclusive remedy against licensees or permittees who provide alcohol to intoxicated persons. Accordingly, we affirm the judgment of the district court granting Risco's motion for summary judgment concerning plaintiffs' common law claim.

V. *Disposition.* We conclude that plaintiffs Eddy may not maintain an action against defendant Risco pursuant to the dramshop act, Iowa Code section 123.92. We also conclude that our construction of the dramshop act does not violate plaintiffs' equal protection rights. Finally, we conclude that the dramshop act preempts the field of liquor vendor liability and provides the exclusive remedy against liquor licensees and permittees concerning alcoholic beverage sales to adults.

We have considered the parties' other contentions and find them without merit or unnecessary to discuss. Accordingly, we affirm the ruling of the district court sustaining defendant Risco's summary judgment motion.

AFFIRMED.

All Justices concur except LARSON, J., joined by SCHULTZ, LAVORATO and SNELL, JJ.

SCHULTZ, J., joined by LARSON, LAVORATO and SNELL, JJ., dissents separately.

LARSON, Justice (dissenting).

The Iowa dramshop statute for many years provided an adequate remedy for persons injured by the acts of intoxicated patrons, but that is no longer so. The legislature has now restricted the scope of section 123.92 so severely that it is applicable in only limited situations. In the case of a sale by a carryout permittee, such as Risco, it is not applicable at all. The effects of this section, as now interpreted by the majority, are bizarre: an innocent victim is denied recovery from the wrongdoer while this wrongdoer (and over 3000 similarly situated permittees) gain the peace of mind of knowing that, regardless of the egregiousness of their actions by selling to an intoxicated person or a minor, they cannot be held liable if the customer simply takes the beer outside the store to consume it.

The wisdom of legislation, or the lack of it, is not for us to decide. The parameters of the common law, however, are very much the responsibility of the court, and we have a constitutional mandate to "issue all writs and process necessary to secure justice" for Iowa's litigants. Iowa Const. art. V, § 4. The majority opinion abdicates our common-law responsibilities to the legislature and sacrifices justice in the name of judicial consistency.

When a dramshop statute is so narrowly drawn that it fails to provide a reasonable means of recovery for victims and a reasonable deterrent to the negligent furnishing of alcohol, there is a recognized right at common law for a victim to sue the provider of the alcohol. Other courts have so held, and so has this court in other cases, when the defendant is not a licensee or permittee. The majority refuses to recognize it here because the defendant is a permittee. The permittee is shielded from liability by the dramshop statute, according to the majority, even though the dramshop statute does not apply!

I dissent from the majority's refusal to recognize a common-law claim because (1) it totally deprives an innocent victim of a civil remedy against a party responsible for

his injuries, and (2) it eliminates a significant deterrent to future misconduct by liquor vendors. The result is a miscarriage of justice—to the victim and to the motoring public. From a policy standpoint, there is no support for the ruling. In fact, the majority does not even claim any policy support for it. Sadly, the majority reaches this result by ignoring statutory rules for the interpretation of our dramshop statute.

This defendant is a convenience store situated, as virtually all of them are, on a busy highway, engaged in the sale of cold beer to a motoring public. This is a singularly dangerous business. At least half of all highway deaths are caused by drunk drivers, and alcohol-impaired driving is the number one killer of young people in this country. *The New Hope of Solution*, Presidential Commission on Drunk Driving, pp. 1–2 (Final Report 1984) [hereinafter Presidential Commission Final Report]. In Iowa there are over 3000 carryout permittees, many of which, like Casey's, are situated on busy highways.

In the argument of this case, Risco claimed that, despite its highway location and despite the fact it was dispensing beer to automobile drivers, it is absolutely immune from any civil liability, even if its driver-customer is "dead drunk." As outrageous as this sounds, this is exactly what the court is saying today.

While the majority pays lip service to the problems created by immunizing carryout licensees such as this defendant, it concludes that we are unable to provide a remedy for two reasons: (1) the legislature has preempted the field by adopting the dramshop statute, Iowa Code § 123.92 (1989); and (2) recognition of a common-law cause of action would be inconsistent with prior opinions of this court.

The "preemption" argument is a specious argument. Section 123.92 is purely a strict liability statute; it has nothing to do with actions based on negligence. It makes no more sense to say, as the majority does, that a strict liability statute "preempts" a suit based on negligent furnishing of alcohol than it does to say that adoption of strict liability under section 496A of the Restatement (Second) of Torts preempts a products liability claim based on negligence. This, of course, has never been our rule. Dramshop statutes such as Iowa Code section 123.92 and common-law suits are entirely separate concepts. The former imposes strict liability without proof of negligence or proximate cause, while the latter requires proof of both.

When the Iowa Legislature amended section 123.92 to limit liability to selling *and* serving, it immunized all carryout licensees, such as Risco, from strict liability under the *statute*. The majority suggests, with great timidity, that we must defer to the legislature to establish the parameters of our common law as well and that the statutory abrogation of strict liability had the effect of eliminating all common-law rights as well. In other words, once the legislature speaks, this court must remain silent. I vigorously disagree; while the legislature has spoken about strict liability in section 123.92, that section says nothing about common-law rights in cases not covered by the statute.

Section 123.1 states that our liquor control act

shall be deemed an exercise of a political power of the State, for the protection of the welfare, health, peace, morals, and safety of the people of the State, and *all its provisions shall be liberally construed for the accomplishment of that purpose.*

(Emphasis added.)

It is well recognized that potential civil liability is an effective deterrent to the negligent furnishing of alcohol. Presidential Commission Final Report, at 11. The majority has read into section 123.92 a provision that is not there: a statutory abrogation of common-law rights. In doing so, the majority violates the standard for interpretation provided by section 123.1, which is to promote the public's welfare, health, peace, morals, and safety.

In addition to the majority's failure to consider the interpretation guidelines of section 123.1, it fails to consider the consequences of its interpretation. The question here is whether section 123.92 abrogates

common-law rights. I say it does not because it does not say so. The most that can be said for the majority's position is that the statute is unclear on the matter. If a statute is not clear, the court should consider the consequences of a particular construction. Iowa Code § 4.6(5) (1991).

The importance of deterrence through the prospect of civil litigation is especially critical in Iowa where the legislature, apparently under liquor industry pressure, has severely restricted other sanctions that might provide effective deterrence. For example, if a carryout licensee sells beer to a minor, the dramshop act does not provide a remedy. *See* Iowa Code § 123.92 (applying only in sale to intoxicated persons).

Perhaps the most significant deterrent, the loss of a license, is not even a possibility for a first offender because authorities are prohibited by statute from suspending the permit for furnishing beer to a minor. Iowa Code § 123.50(3)(a) ("civil penalty" of $300 in lieu of suspension). Furthermore, the fine that would be imposed on a finding of guilt of this offense, which is a simple misdemeanor, is so small that it would constitute a virtually negligible cost of doing business. In other words, without a viable right to sue providers of alcohol, there is no meaningful deterrent to negligent, or even reckless, acts by the permittee.

Another consequence of the majority's interpretation is that it will lead to the purchase of a license or permit merely to shield a person, otherwise not required to purchase a license, from liability. A social host furnishing beer to minors, for example, as to whom we have recognized common-law liability as a nonlicensee, might simply purchase a temporary permit (at a cost of less than $20) and enjoy complete immunity on the ground it is now a "permittee."

For all of these reasons, the majority's interpretation of section 123.92 to preempt a common-law right of action is inconsistent with accepted principles of statutory construction, violates the public policy of the statute, and ignores the rights of victims and the motoring public.

In addition to its statutory construction argument, however, the court contends that we cannot recognize a common-law right of recovery because it would be inconsistent with our prior cases. It is true that prior cases have shown deference to the remedies provided by statute, and this seemed to be an acceptable arrangement when the dramshop statute had a reasonably broad scope. That is no longer true.

While our dramshop statute originally applied to all persons, it now applies only to licensees and permittees; and while it originally allowed recovery for damages resulting from any illegal furnishing of intoxicating beverages, it now provides for recovery only if the sale is made to an intoxicated person. Iowa Code § 123.92 (1991). As already noted, the statute does not even provide a right of action for selling alcohol to a minor. While the statute for many years covered "furnishing" of alcohol, it later evolved to cover only sales. Now, as previously discussed, it only applies if the alcohol is sold *and served. Id.* The legislature has thus steadily diminished the scope of the dramshop statute to the point that it is largely irrelevant in many cases. In the present case, it has no application at all. I submit that the legislature's constriction of the dramshop statute requires a new look at our cases that defer to the legislature's "remedy" for these cases.

For over 100 years, Iowa rejected a common-law cause of action because the furnishing of alcohol was considered to be too remote to be a proximate cause of the injury. *See Robinson v. Bognanno,* 213 N.W.2d 530, 531 (Iowa 1973); *Cowman v. Hansen,* 250 Iowa 358, 373, 92 N.W.2d 682, 690 (1958); Rinden, *Judicial Prohibition? Erosion of the Common–Law Rule of Non–Liability for Those Who Dispense Alcohol,* 34 Drake L.Rev. 937, 969–70 (1985–86) [hereinafter Rinden].

In *Lewis v. State,* 256 N.W.2d 181 (Iowa 1977), this court for the first time recognized a common-law claim for the illegal furnishing of alcohol. We held that liquor control statutes, such as those prohibiting sales to minors and intoxicated persons, set a minimum standard of care and that is-

sues of proximate cause should be submitted to the fact finder in a liquor case, as in any other. *Id.* at 192.

*Lewis* relied on three cases from other jurisdictions that recognized similar common-law claims, *Waynick v. Chicago's Last Dep't Store,* 269 F.2d 322 (7th Cir. 1959), *cert. denied,* 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554 (1960); *Trail v. Christian,* 298 Minn. 101, 213 N.W.2d 618 (1973); and *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959). *See Lewis,* 256 N.W.2d at 190–92. These cases involved injuries to innocent third parties, and they were premised on the right of third parties to the protection of liquor control statutes, *Waynick,* 269 F.2d at 325–26, and the concern for basic unfairness in denying such a plaintiff's claim for damages. *See Trail,* 213 N.W.2d at 625 ("We ... see no reason to now perpetuate the injustice and hardship resulting from the application of the judicially formulated rule [denying recovery]."); *Rappaport,* 31 N.J. at 205, 156 A.2d at 10 ("[W]e are convinced that recognition of the plaintiff's claim will afford a fairer measure of justice to innocent third parties whose injuries are brought about by the unlawful and negligent sale of alcoholic beverages....").

On occasion, this court has determined that, in view of the limited scope of our dramshop statute, we would recognize a right at common law to recover for damages to third parties. For example, after the legislature restricted the class of possible defendants from "any person" to "licensees or permittees," we responded by recognizing suits at common law against nonlicensees such as (1) tavern employees, *Haafke v. Mitchell,* 347 N.W.2d 381, 388 (Iowa 1984); (2) social hosts providing liquor to adult guests, *Clark v. Mincks,* 364 N.W.2d 226, 229–31 (Iowa 1985); and (3) social hosts providing beer to underage drinkers, *Blesz v. Weisbrod,* 424 N.W.2d 451, 453 (Iowa 1988).

Sometimes the legislature has acquiesced in the expansion of the common law in these areas; sometimes it has not. In response to *Clark,* which recognized a common-law suit against social hosts, the legis-

lature responded by amending Iowa Code section 123.49(1) to specifically abrogate suits against social hosts arising out of furnishing alcohol to adult guests.

Despite the legislature's negative reaction to *Clark,* however, *Lewis* and the later cases of *Haafke* and *Blesz* remain intact; common-law causes of action are still recognized in cases against tavern employees, *Haafke,* 347 N.W.2d at 388; Rinden, at 977. Common-law suits against persons furnishing alcohol to a minor guest also remain viable after *Blesz,* as the legislature has not acted to abrogate such claims.

The anomalous result of our cases is that tavern employees and social hosts of minors, who are only peripherally involved in the liquor business, are liable at common law while licensees and permittees, who are in the business of selling alcohol, have been immunized. These results are difficult to reconcile.

> Indeed, it is impossible to imagine why, of all occupations, those who furnish liquor should be singled out for a judicially conferred blessing of immunity to respond in damages for the wrongful acts.

*Ontiveros v. Borak,* 136 Ariz. 500, 505, 667 P.2d 200, 205 (1983). The court in *Ontiveros* also said:

> We acknowledge that in some situations, the public interest, constitutional considerations, or both, require special rules to protect certain businesses, professions or occupations from the ordinary theories of tort liability. Thus, those who speak and publish on matters of public interest or concern are not held liable for ordinary negligence and rules of judicial and legislative immunity and privilege or quasi-privilege are recognized. Although they do not promote care, such exemptions from ordinary tort liability have been found necessary as a matter of public welfare. We do not find such considerations applicable to the liquor industry. If we are mistaken in this, it is possibly within the legislative power to confer upon the liquor industry some special benefit exempting it from liability. Their failure to speak on the

issue so far does not convince us that they have such a desire.

*Id.* at 512–13, 667 P.2d at 212–13.

This case presents the first opportunity to answer the specific question reserved in *Snyder v. Davenport*, 323 N.W.2d 225 (Iowa 1982): whether a common-law claim against a licensee for acts not covered by the dramshop statute will be recognized in the face of the 1986 amendment whose "serving" requirement effectively immunized carryout permittees from suits under the dramshop statute. *Id.* at 228 n. 2.

Our recent case of *Nutting v. Zieser*, 482 N.W.2d 424 (Iowa 1992), which denied a common-law claim to the intoxicated patron himself, must be distinguished. The predicate underlying a common-law claim, the unfairness of denying compensation to innocent victims, is missing when the intoxicated person is himself making the claim. *See Rappaport*, 31 N.J. at 205, 156 A.2d at 10; *Trail*, 213 N.W.2d at 620 (cause of action to be restricted to "an innocent third party not a patron of the vendor").

Tension between legislative restrictions on common-law coverage and judicial responses, as in this case, is not unusual. One authority has observed:

> The trend in legislation is toward limiting liquor liability. Legislatures in 19 states enacted new laws or amended existing dramshop statutes in 1986. Most of these measures had the effect of limiting commercial server or social host liability in some form. Many were part of a general tort reform statute.
>
> But the courts appear to be moving in the other direction. Last year there were significant decisions that expanded liability in Oklahoma, ... Texas, ... and West Virginia, where tavern and restaurant owners were held liable for the first time.

J. Goldberg, *One for the Road; Liquor Liability Broadens*, ——— A.B.A.J. 85, 86 (June 1, 1987). Another writes:

> The light of reforms so easily implemented by the various courts dimmed as it filtered through the state legislatures of Alaska, California, Florida, Oregon, and South Dakota. The legislatures of

these states examined the liberal trend of the courts in applying civil liability to the purveyor of intoxicating beverages, and passed statutes which severely restricted the tides of judicial prohibition.

Rinden, at 962. Our experience in Iowa is similar, as illustrated by the legislature's "abrogation" of our social host case, *Clark v. Mincks*.

At least one writer attributes the legislative constriction of civil damage actions to the direct influence of intensive liquor interest lobbying. Humphrey, *Tennessee Sharply Cuts "Dramshop" Liability*, ——— Nat'l L.J. 3 (1986); *see* Comment, *Server vs. Driver Liability: A Suggested Change to Reduce Drinking and Driving*, ——— N. Ill.U.L.Rev. 257, 258 (1987). The effect of such lobbying is, perhaps, nowhere more obvious than in Iowa.

Similar questions involving narrowly drawn dramshop statutes, and the efforts of state courts to supplement the statutes, are found in the experiences of Minnesota, Ohio, and Colorado. The court in *Trail v. Christian* noted the restrictive scope of Minnesota's dramshop statute and addressed the question whether a common-law claim should be recognized. According to the Minnesota court, the fact that the legislature had failed to include 3.2 beer (which was involved in *Trail*) in the dramshop statute did not preclude a common-law suit based on the sale of 3.2 beer, stating:

> We will not promote legislative silence to legislative preemption. To do so would immunize a certain segment of the liquor industry, namely, dispensers of 3.2 beer, from liability for negligent conduct to innocent third persons.

298 Minn. at 112, 213 N.W.2d at 625. The Minnesota court adopted common-law negligence to supplement the dramshop statute. *Id.* at 113, 213 N.W.2d at 625.

A restrictive Ohio dramshop statute was supplemented to allow a common-law claim for acts falling outside the dramshop statute in *Mason v. Roberts*, 33 Ohio St.2d 29, 294 N.E.2d 884 (1973). The court noted that the Ohio statute allowed recovery only if the intoxicated person had been listed on

a "blacklist" published by the Ohio Department of Liquor Control. The intoxicated person's name was not on the list, and the district court dismissed the case on preemption grounds. The supreme court reversed, saying:

> The manifest purpose of the enactment of the so-called blacklisting statutes was to increase public protection by imposing absolute or strict liability in those cases. It defeats the real purpose of the enactment of the blacklisting statute to twist it into an immunity bath for all other cases.

*Id.* at 32, 294 N.E.2d at 887.

Similarly, because Colorado had a very restrictive dramshop statute, the Colorado court in *Largo Corp. v. Crespin*, 727 P.2d 1098 (Colo.1986), refused to give the statute preemptive effect. In doing so, it rejected the defendant's argument that the "comprehensive legislation pertaining to alcoholic beverage" revealed a legislative intent to preempt the area of civil liability and the court was "therefore precluded from expanding common-law liability." *Id.* at 1105.

The Colorado Supreme Court noted that the coverage of the statute was very narrow, providing a cause of action under "extremely limited circumstances" and should therefore not be given preemptive effect. *Id.* at 1105–07. The court distinguished a Michigan case, *Browder v. International Fidelity Inc.*, 413 Mich. 603, 321 N.W.2d 668 (1982), on the ground that, unlike Colorado's dramshop statute, Michigan's statute was "written very broadly," and it was therefore more reasonable to give it preemptive effect. *Id.* at 1105.

The blue ribbon presidential commission established to study the problem of carnage on the highway resulting from drunk driving concluded as a part of its specific recommendations:

> States should enact "dramshop" laws establishing liability against any person who sells *or* serves alcoholic beverages to an individual who is visibly intoxicated.

Presidential Commission Final Report, at 11 (emphasis added).

The commentary in support of this recommendation specifically notes that states should recognize claims under both the common-law and dramshop statutes, stating:

> *Dramshop laws are not intended to replace common-law liability or vigorous enforcement of State [liquor] regulations* as useful countermeasures to driving under the influence. With the increasing movement to strengthen victims' rights, dramshop laws may facilitate compensation and help deter illegal sales of alcoholic beverages. These laws implicitly establish the necessity of placing responsibility on the part of the seller or server, whether they be commercial or individual hosts. Dramshop laws also reinforce the principle that others have a responsibility to prevent intoxicated individuals from driving.

*Id.* (emphasis added).

As the presidential commission has noted, an adequate civil remedy is necessary to provide an effective deterrent to the illegal furnishing of alcohol. This is especially true in Iowa. In fact, the "penalty" provisions seem to occupy second billing in a liquor control act more concerned with technical licensing than the prevention of careless sales of alcohol. For example, if a permittee allows gambling on the premises or reuses containers, his license must be revoked. Iowa Code §§ 123.50(3); 123.-49(2)(a), (e). But if a permittee sells beer to a minor, the administrator is *prohibited* from even suspending the beer permit. Iowa Code § 123.50(3)(a) (permit may not be suspended, but "civil penalty" of $300 assessed).

I agree with the Minnesota, Ohio, and Colorado courts that, when a dramshop statute is so restrictively drawn as to immunize a large share of liquor vendors, a common-law right should be recognized. There is nothing in section 123.92 that suggests a common-law action is precluded, and an interpretation of the dramshop statute that allows a common-law claim would better accord with the principles of interpretation for the liquor control act as set out in section 123.1.

This approach is a fair balancing of the interests of liquor vendors and the public whose "welfare, health, peace, morals, and safety" are the touchstones for interpretation of our liquor laws. Iowa Code § 123.1. All it requires of a liquor vendor is that he use due care in the furnishing of alcohol. As the New Jersey Supreme Court has stated in recognizing a common-law claim in *Rappaport*,

> we are convinced that recognition of the plaintiff's claim will afford a fairer measure of justice to innocent third parties whose injuries are brought about by the unlawful and negligent sale of alcoholic beverages to minors and intoxicated persons, will strengthen and give greater force to the enlightened statutory and regulatory precautions against such sales and their frightening consequences, and will not place any unjustifiable burdens upon defendants who can always discharge their civil responsibilities by the exercise of due care.

*Rappaport*, 31 N.J. at 205, 156 A.2d at 10. *See* Rinden, at 938.

For the reasons stated, I believe that a common-law claim should have been recognized on behalf of this victim. I would reverse the district court's judgment and remand for further proceedings.

SCHULTZ, LAVORATO and SNELL, JJ., join this dissent.

SCHULTZ, Justice (dissenting).

I join the dissent of Larson, J.; however, I wish to add my own comments.

The backbone of the majority opinion is that Iowa Code section 123.92 (1989), provides the exclusive remedy against a licensee and permittee and preempts a common-law negligence action based on the illegal sale of intoxicants against a licensee or permittee. I believe this conclusion is wrong.

In an earlier case, we established the rule that Iowa Code section 123.92 (1979), provided the exclusive remedy against a permittee for the sale of liquor to an intoxicated person. *Snyder v. Davenport*, 323 N.W.2d 225, 226–27 (Iowa 1982). In *Sny-* der, the plaintiff attempted a common-law action for the violation of a statute that prohibited the same conduct which gave rise to the remedy provided in the dramshop statute. We held the statutory scheme which provided licensee liability eliminated a common-law action against the licensee. *Id.* at 227.

Unlike the statute in *Snyder,* Iowa Code section 123.92 (1989), provides no liability unless the permittee "serves" the alcoholic beverage. A class "C" licensee is only authorized to sell beer for off-premises consumption and cannot serve the beer. Iowa Code § 123.132 (1989). Consequently, current section 123.92 does not provide a remedy against a class "C" permittee for the conduct prohibited by this statute.

The majority opinion is wrong in applying a rule of exclusive remedy, or preemption of common-law actions against a class "C" permittee, if the statute has been amended to withdraw a statutory remedy against a permittee. The general rule is that repeal of a statute abrogating the common law revives the common law as it was before the statute. *State v. Buck*, 275 N.W.2d 194, 197 (Iowa 1979); 2B N. Singer, *Sutherland Statutory Construction* § 50.-01, at 90 (5th ed. 1992); 73 Am.Jur.2d *Statutes* § 384, at 505 (1974). I believe this rule is applicable here. The legislature's amendment of section 123.92 adding a condition requiring that the permittee "served" the beer, 1986 Iowa Acts ch. 1211, § 12, effectively repeals the statute's applicability to a class "C" permittee. I would apply the revival rule and allow a common-law negligence action against the class "C" permittee. *See Lewis v. State*, 256 N.W.2d 181, 191–92 (Iowa 1977).